**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2462-19

NANA "NURII" HARRIS,

     Plaintiff-Appellant,

v.

ENGLEWOOD HEALTH,
and ENGLEWOOD HOSPITAL
BEHAVIORAL HEALTH,

     Defendants,

and

ENGLEWOOD HOSPITAL
AND MEDICAL CENTER,

     Defendant-Respondent.

_____

Submitted January 5, 2021 – Decided March 29, 2021

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8403-18.

Piro Zinna Cifelli, attorneys for appellant (Daniel R. Bevere, of counsel and on the briefs).

Clare & Scott, LLC, attorneys for respondent (John R. Scott, of counsel and on the brief).

PER CURIAM

Plaintiff, a patient who was punched by another patient in a hospital's behavioral-health unit, appeals an order dismissing direct and certain vicarious claims against the hospital due to plaintiff's failure to serve a compliant affidavit of merit and a subsequent order granting summary judgment as to the remaining claims. Because we agree plaintiff was required to submit an affidavit of merit and failed to submit a statutorily-compliant affidavit, we affirm.

I.

Plaintiff filed a complaint naming as defendants Englewood Health, Englewood Hospital Behavioral Health, and Englewood Hospital and Medical Center (collectively the "hospital" or "defendant"), as well as fictitiously named defendants she described as "unknown nurses, orderlies and security officers who were responsible for the safety and security of [p]laintiff." She alleged that while she was a patient in the hospital's behavioral-health unit, another patient assaulted her at night when she was in the recreation room. She made no other allegations about the assault or about the other patient and did not contend

2

defendants knew or should have known he was dangerous or posed a risk of harm to plaintiff.

In the first count of the complaint, plaintiff asserted the hospital was negligent in that it failed to "provide adequate and proper security to [p]laintiff"; "abide by required protocols for patient safety"; and "monitor the activities of patients in common spaces in the behavioral health unit" and "the movements of patients between rooms in the behavioral health unit."  In the second count, plaintiff repeated those negligence claims against the fictitious defendants. Plaintiff never moved to name a fictitious party and never identified any nurse, orderly, or security officer who had acted negligently or had any involvement whatsoever in the incident.

The hospital filed an answer in which it demanded plaintiff serve an affidavit of merit pursuant to the Affidavit of Merit Statute, N.J.S.A. 2A:53A-26 to -29.  Plaintiff's counsel responded in writing, relaying plaintiff's "position that the claims asserted by [plaintiff] against [the hospital] are not professional malpractice claims and therefore no [a]ffidavit of [m]erit is needed or warranted."  Despite that position, he enclosed an affidavit executed by Diane E. Meehan, who identified herself as a registered nurse and family nurse practitioner, not as a hospital administrator.

A-2462-19

The affiant opined "there exists a reasonable probability that [the hospital] failed to take appropriate measures to protect [plaintiff]" and "there is sufficient evidence at this time to conclude that the care rendered by the [hospital] and its staff was inappropriate and fell outside acceptable professional or occupational standards or treatment practices." She did not identify by name, position, or even general occupation any staff member who was negligent. She did not use the word "nurse" or "nursing" to describe any staff member.

The hospital objected on the grounds the affidavit failed to identify the specific individuals whose negligence formed the basis of plaintiff's claims and was executed by someone who was not qualified to render an opinion about hospital policies or administration. After plaintiff did not respond to that objection, the hospital moved to dismiss "all alleged malpractice claims" based on those purported deficiencies. The hospital argued plaintiff's affiant was not qualified to opine about the subject plaintiff had complained about, that is, security in a psychiatric ward, and had not opined about the subject for which she was qualified, that is, whether a particular nurse had deviated from a standard of care.

Responding to the motion, plaintiff argued, among other things, she was not required to serve an affidavit of merit because she had not filed a

professional-malpractice case. In her brief, she advised the court she would not object to an order "clarifying" plaintiff was not pursuing a "professional negligence" claim and "that the only claims being pursued are those for negligent security and general negligence." During oral argument, plaintiff's counsel represented to the court "this is not a professional malpractice claim" and "[w]e're not saying there was a deviation with regard to her medical treatment and care." Plaintiff's counsel agreed with the court that: plaintiff was "talking about the way the hospital ran the psych unit"; plaintiff had not identified a specific nurse who allegedly was negligent and had not "put the hospital on notice of what nurse [plaintiff's] expert is claiming deviated from the standard of care"; plaintiff's "negligence claim against the hospital, itself, for its own action . . . for the protocols that were put in place, for how it managed that" was barred; and the only remaining claim was for the "negligent acts of unlicensed employees for whose negligence the hospital as the employer may be held responsible."

Following that colloquy, the judge issued an order dismissing with prejudice "all claims asserted against [the hospital] and/or any persons working at [the hospital] for whom an [a]ffidavit of [m]erit is required." In the order the judge expressly permitted plaintiff to pursue claims against the hospital "for

5

respondeat superior liability for non-professional (non-[a]ffidavit of [m]erit) employees." Given plaintiff's written and oral presentation in response to the motion, we can understand why the trial judge may have comprehended that plaintiff agreed with her decision and the directives set forth in the order.

In the course of discovery, plaintiff elaborated on her contentions. When asked in an interrogatory to provide a "complete description of all security measures" that should have been provided, what monitoring should have been performed, and what "required protocols for patient safety" were not followed, plaintiff responded:

> There should have been a security person present in the day room and that security person should have foreseen the pending altercation based upon the alarming conduct exhibited by the assailant as he approached the piano in a threatening manner and demanding that [p]laintiff stop playing; and intervened to prevent any potential physical contact. This answer is subject to continuing discovery.

When asked to identify "each negligent act and/or negligent omission that you attribute to each defendant," plaintiff repeated the above answer and added:

> [S]ince the patient was a dementia patient, the patient should have been watched and guarded more carefully by hospital staff as the potential was present for violent acts such as were committed here. A member of the hospital staff, such as a security guard or orderly, should have been in the vicinity to monitor the assailant's behavior and conduct, so that intervention

6

> could occur before physical contact.  Again, this answer
> is subject to continuing discovery.

Referencing only "security person," "security guard," and "orderly," plaintiff said nothing about nurses in those interrogatory answers.  She did not amend her interrogatory responses.

In her deposition, plaintiff testified that when the other patient entered the day room, he was "not yelling just yet, but speaking sternly, telling me to stop playing."  She ignored him.

> And then that just kept going on for maybe, maybe like two to three minutes and he started to walk closer to me and like started banging his walker like and telling me, again, to stop playing and then I just kept playing and then that's when he moved back a little and like come to the side of the piano and started to push it against me until I was up against the wall.
>
> And then I just kept playing again, just not looking at him, not making any eye contact, and then he came back around to like where I was and started screaming at me more and telling me to stop playing and then like a few minutes later, after that kept going on, that's when he punched me.

She estimated that seven minutes had elapsed from the time the other patient entered the room until he punched her.  She stated the nurses' station was down the hall on the right side.

A-2462-19

After the close of discovery, defendant moved for summary judgment on the remaining claims. Plaintiff had not served any expert report identifying any negligent act or omission by any hospital employee. During oral argument on the summary-judgment motion, plaintiff's counsel conceded plaintiff did not have any evidence of negligence by any non-professional hospital employee and agreed claims based on the alleged negligence of nurses had been dismissed in the court's prior order. Attempting to distance plaintiff's claim from "professional negligence," plaintiff's counsel characterized plaintiff's claim as "a simple matter of common knowledge . . . there is an altercation going on, albeit it was verbal, that people who are within earshot and are working there should have come to her aid." In response, defense counsel argued "you're not dealing with common knowledge of what a nurse should or shouldn't do with a dementia patient" or "how a behavioral health unit operates in a hospital." The court granted the motion, finding plaintiff had not shown "any specific negligent act of any specific non-professional employee" and "the standard by which the conduct of the nurses in responding or not responding or what they did is one that has to be established by expert testimony."

8

II.

In this appeal, plaintiff contends the trial court erred in (1) dismissing claims against the hospital based upon the Affidavit of Merit Statute; and (2) finding plaintiff's affidavit was not compliant with the Affidavit of Merit Statute. Plaintiff again represents that her "assertions of negligence did not involve the rendering of patient medical care." Characterizing her case as a "premises liability claim," plaintiff argues the hospital should have known the other patient posed a risk of harm to plaintiff[1] and should have protected plaintiff, as a "paying invitee," from him and staff members should have intervened to prevent the assault. Based on that description of the case, plaintiff argues she was not required to serve an affidavit of merit. Alternatively, she asserts the affidavit she submitted was sufficient. In response, the hospital argues the trial court properly analyzed plaintiff's claim and correctly determined it required an affidavit of merit as to alleged negligence of the hospital and its licensed staff and the affidavit plaintiff submitted was not compliant with the Affidavit of Merit Statute.

---

[1] The police officer who prepared a report about the incident described the other patient as suffering from "severe dementia" and as being "very old and frail" with "trouble walking." The record is devoid of any evidence suggesting – much less establishing – the hospital should have known the other patient was dangerous or posed a risk of harm to plaintiff or anyone.

A-2462-19

We review de novo motions to dismiss based on failures to comply with the Affidavit of Merit Statute, Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016), in part because they involve a legal determination, specifically "the statutory interpretation issue of whether a cause of action is exempt from the affidavit of merit requirement," Cowley v. Virtua Health Sys., 242 N.J. 1, 14-15 (2020), and in part because they involve a dismissal of a complaint for failure to state a claim. "The submission of an appropriate affidavit of merit is considered an element of the claim." Meehan v. Antonellis, 226 N.J. 216, 228 (2016). Thus, "[f]ailure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." Ibid.; see also Cowley, 242 N.J. at 16. Accordingly, we limit our inquiry to "examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989); see also Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019). We conduct a de novo review of summary judgment orders and apply the same standard employed by the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014).

The Affidavit of Merit Statute requires

> [i]n any action for damages for personal injuries, wrongful death or property damage resulting from an

alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

[N.J.S.A. 2A:53A-27.]

The purpose of the statute is "to weed out frivolous claims against licensed professionals early in the litigation process." Meehan, 226 N.J. at 228. See also Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 6) (intent of Legislature was to ensure parties did not waste time or resources on unnecessary litigation, including discovery). Thus, pursuant to the statute, "a plaintiff must provide 'each defendant' with an affidavit that indicates the plaintiff's claim has merit." Fink v. Thompson, 167 N.J. 551, 559-60 (2001).

A "licensed person" includes a "physician in the practice of medicine or surgery," "a registered professional nurse," and "a health care facility" N.J.S.A. 2A:53A-26(f) to (j). Plaintiff does not dispute that the hospital and its doctors and nurses fall within that definition.

A-2462-19

Not every claim against a licensed person requires an affidavit of merit. An "affidavit will only be needed when the underlying harmful conduct involves professional negligence, implicating the standards of care within that profession." McCormick v. State, 446 N.J. Super. 603, 613-14 (App. Div. 2016); see also id. at 614 (noting affidavit of merit not required in cases involving a nurse who spills hot coffee on a patient or who falls and knocks someone over).

In deciding whether a plaintiff must submit an affidavit of merit, courts must look deeper than how parties designate their cases. "It is not the label placed on the action that is pivotal but the nature of the legal inquiry." Couri v. Gardner, 173 N.J. 328, 340 (2002). Instead of focusing on a label, "courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession." Ibid. If that proof is necessary, "an affidavit of merit is required for that claim, unless some exception applies." Ibid.

Our courts have acknowledged a "common knowledge exception" to the Affidavit of Merit Statute requirements. Cowley, 242 N.J. at 16. "In the exceptionally rare cases in which the common knowledge exception applies," id. at 17, a plaintiff does not have to submit an affidavit of merit "where the

carelessness of the defendant is readily apparent to anyone of average intelligence." Rosenberg v. Cahill, 99 N.J. 318, 325 (1985). "In those exceptional circumstances," Cowley, 242 N.J. at 17, the "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts," Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999). The common knowledge exception is construed "narrowly in order to avoid non-compliance with the statute." Hubbard v. Reed, 168 N.J. 387, 397 (2001). Examples of circumstances falling under the common knowledge exception include a dentist extracting the wrong tooth, id. at 396-97, and a doctor reading specimen numbers as actual test results, Palanque v. Lambert-Woolley, 168 N.J. 398, 407-08 (2001).

Attempting to evade the requirements of the Affidavit of Merit Statute, plaintiff labels this case a "premises liability claim" and argues that because her "claims are not unique to rendering medical care" and "are not claims of professional negligence," they "do not require an [a]ffidavit of [m]erit." She analogizes the facts of this case to an assault in a restaurant and the duty of a restaurant owner to provide for the safety of its patrons.

But the events of this case did not take place in a restaurant. They took place in a behavioral-health unit of a hospital. And the people allegedly involved in the incident weren't waiters and diners, but behavioral-health unit staff members and patients hospitalized for treatment of their mental-health illnesses. The questions raised by the facts of this case – how a hospital should staff a behavioral-health unit, whether and what security the hospital should provide given the characteristics of the patient population of the unit, how it should staff a nurses' station in the unit, whether a patient with dementia poses a risk to another patient, to what extent and how patients should be monitored and supervised, whether a patient has violent tendencies requiring extra precautions and the determination of what those precautions should be, and what procedures and protocols hospitals should have in place for hospital staff to follow in the event of an altercation between behavioral-health-unit patients or a violent act by a patient – convince us this case is about more than simple, ordinary negligence and involves subject matters falling outside jurors' common knowledge and experience. Accordingly, we conclude plaintiff had an obligation to provide an affidavit of merit regarding direct claims against the hospital and vicarious claims against the hospital based on the alleged negligence of its licensed staff and that the common knowledge exception to the

14

affidavit-of-merit requirements does not apply to excuse plaintiff from that obligation.

Having found the court correctly held an affidavit of merit was required, we now address whether the affidavit of merit served by plaintiff met the requirements of the statute. The Legislature determined the required qualifications for an affiant.

> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in [N.J.S.A. 2A:53A-41]. In all other cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years.
>
> [N.J.S.A. 2A:53A-27.]

Thus, to demonstrate a claim is meritorious in accordance with the Affidavit of Merit Statute, a plaintiff must "obtain[] an affidavit from an appropriate, licensed expert attesting to the 'reasonable probability' of professional negligence." Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 149-50 (2003). An affidavit of merit must be executed by a like-licensed professional.

A-2462-19

Hill Int'l, Inc. v. Atl. City Bd. of Educ., 438 N.J. Super. 562, 587 (App. Div. 2014).

Plaintiff's affiant rendered two opinions:   "there exists a reasonable probability that [the hospital] failed to take appropriate measures to protect [plaintiff]" and "there is sufficient evidence at this time to conclude that the care rendered by the [hospital] and its staff was inappropriate and fell outside acceptable professional or occupational standards or treatment practices."  As a registered nurse and family nurse practitioner, the affiant is not qualified to opine about hospital security measures, protocols, and staffing in a behavioral-health unit, which – labels aside – is what this case is about.

Plaintiff's affiant may be qualified to opine about nursing care and whether a nurse failed to meet accepted standards in the care rendered to a patient.  But as plaintiff has represented repeatedly, this case is not about the care plaintiff received and is not about malpractice.  It is about whether the hospital had appropriate security measures and protocols in place in its behavioral-health unit.

The affidavit itself demonstrates that this case is about the policies and procedures of the hospital and not the negligent act of one individual.  The affiant did not identify an employee who was negligent or even any type of

A-2462-19

employee that was negligent but generically references "staff." She did not identify what standard of care was unmet or describe what actions the unnamed staff member should have taken or failed to take.

The parties argue about whether plaintiff was required to include in the affidavit the name of an allegedly negligent nurse. What is clear to us is that this blanket affidavit fails to comply with the Affidavit of Merit Statute because it fails to meet its purpose: to enable the parties "to weed out frivolous claims against licensed professionals early in the litigation process." Meehan, 226 N.J. at 228. Plaintiff failed to provide defendant with an affidavit indicating that plaintiff's vicarious claims had merit. See Fink, 167 N.J. at 559-60.[2] Accordingly, we find the trial court correctly concluded plaintiff's affidavit was not statutorily compliant.

Plaintiff included both orders in her amended notice of appeal but focused her briefs on the first order. She apparently included the summary-judgment order because she believes the reversal of the first order requires reversal of the

---

[2] Although this issue was not raised by the parties or the trial court, we note, with respect to her second opinion regarding staff, the affiant failed to opine within a "reasonable probability" that a staff member had failed to meet an applicable professional standard of care but only that "sufficient evidence" existed for that conclusion. Ferreira, 178 N.J at 149-50. See N.J.S.A. 2A:53A-27 (requiring "an affidavit . . . that there exists a reasonable probability" of a deviation from a standard of care); Buck v. Henry, 207 N.J. 377, 382 (2011).

summary-judgment order. Because we affirm the order granting defendant's motion to dismiss and because plaintiff did not make any substantive arguments regarding the summary-judgment order, we affirm without further comment the summary-judgment order. N.J. Dep't of Env't Prot. v. Alloway, 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (issue "not briefed is deemed waived").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2462-19