NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-3777-13T3

MORTGAGE GRADER, INC.,

    Plaintiff-Respondent,

v.

WARD & OLIVO, L.L.P., and
JOHN OLIVO, ESQ.,[1]

    Defendants,

and

JOHN WARD, ESQ.,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 14, 2014**
>
> **APPELLATE DIVISION**

Submitted November 5, 2014 — Decided November 14, 2014

Before Judges Yannotti, Fasciale and Hoffman.

On appeal from Superior Court of New Jersey, Law Division, Union County, Docket No. L-3739-12.

Piro, Zinna, Cifelli, Paris & Genitempo, L.L.C., attorneys for appellant (Daniel R. Bevere and Shane A. Sullivan, on the brief).

Pashman Stein, P.C., attorneys for respondent (Dennis T. Smith and Michael J. Zoller, on the brief).

_____

[1] Incorrectly designated as Ward & Olivio, L.L.P. and John Olivio, Esq.

The opinion of the court was delivered by

FASCIALE, J.A.D.

In this legal malpractice case, we granted leave to appeal from a February 28, 2014 order denying defendant John Ward's motion to dismiss the complaint for failure to comply with the Affidavit of Merit Statute ("AMS"), N.J.S.A. 2A:53A-26 to -29.

Under the facts of this case, Ward argues that he is shielded from liability as a partner in a limited liability partnership ("LLP") and is therefore not vicariously liable for the alleged legal malpractice of his former partner, defendant John Olivo. Ward also contends that he is otherwise entitled to a dismissal of the complaint because plaintiff Mortgage Grader, Inc. ("MG") failed to serve an affidavit of merit ("AOM") on Ward or substantially comply with the AMS.

The primary issue is whether Ward loses his liability protection as a partner in an LLP if the LLP failed to purchase a tail insurance policy.[2] We disagree with the motion judge that such a sanction is authorized and hold that when attorneys practice law as an LLP, and the LLP fails to obtain and maintain

_____

[2] A tail insurance policy provides insurance coverage for malpractice that occurs during the claims-made policy coverage period but is reported after the claims-made policy has lapsed. See Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 310-11 (1985) (describing various types of insurance coverage including the definition of a "tail").

professional liability insurance as required by Rule 1:21-1C(a)(3), the LLP does not revert to a general partnership ("GP") under the Uniform Partnership Act ("UPA"), N.J.S.A. 42:1A-1 to -56. Rather, pursuant to Rule 1:21-1C(a)(2), "[a]ny violation of [Rule 1:21-1C] by the [LLP] shall be grounds for the Supreme Court to terminate or suspend the [LLP]'s right to practice law or otherwise to discipline it." (Emphasis added). We also conclude that Ward is entitled to a dismissal of the complaint against him because MG failed to serve an AOM on Ward or substantially comply with the AMS.

As a result, we reverse, remand, and direct the trial court to enter an order dismissing the complaint against Ward with prejudice.

I.

Ward and Olivo established defendant Ward & Olivo, L.L.P., ("W&O"), a law firm engaged in the practice of intellectual property law. Ward and Olivo formed W&O as an LLP pursuant to the UPA,[3] and W&O obtained and maintained a claims-made professional liability insurance policy.

---

[3] N.J.S.A. 42:1A-47 delineates the requirements for becoming an LLP: approval by partnership vote, filing of a statement of qualification with the office of the Division of Commercial Recording in the Department of the Treasury, and appointment of an agent for service of process.

On July 29, 2009, MG retained W&O to sue various persons or entities for patent infringement. Olivo entered into a contingency fee agreement with MG and filed a lawsuit (the "underlying lawsuit") against several defendants. MG settled the underlying lawsuit ("the settlements") by giving those defendants licenses in exchange for payment of a "one-time settlement amount."

On June 30, 2011, Ward and Olivo stopped actively practicing law as W&O.[4] Thereafter, W&O began winding up its law practice by collecting outstanding legal fees. W&O's professional liability insurance policy expired on August 8, 2011, and W&O did not purchase a tail insurance policy.

MG filed a legal malpractice complaint against W&O, Olivo, and Ward in October 2012. MG alleged in its complaint that Olivo's legal advice harmed MG's patent rights because Olivo, among other things, failed to require that royalty rates or licensing fees be part of the settlement. MG also alleged that W&O and Ward were vicariously liable for Olivo's acts or omissions. By the time MG filed its complaint, W&O's claims-made policy had expired and W&O was uninsured. Ward had no

---

[4] Since July 1, 2011, Ward has engaged in the practice of law with another partner in a different LLP.

involvement in the underlying lawsuit, the settlements, or Olivo's legal representation of MG.

On March 5, 2013, Ward filed his answer to the complaint. MG did not provide Ward with an AOM within 120 days pursuant to N.J.S.A. 2A:53A-27 (establishing deadlines for service of an AOM). On July 29, 2013, Ward filed his motion to dismiss the complaint for failure to serve the AOM. Ward also argued that, under the facts of this case, he was shielded from liability as a partner of W&O pursuant to N.J.S.A. 42:1A-18c (indicating generally that a partner in an LLP is not personally liable for the acts of another partner).

MG maintained that it had substantially complied with the AMS by serving Olivo and W&O, but not Ward, with a December 19, 2012 AOM prepared by John P. Maldjian, Esq. (the "Maldjian AOM"). The Maldjian AOM states that only Olivo provided substandard legal services, and that "[b]ecause [Olivo] was part of an apparent partnership, known as [W&O], [Maldjian's] opinion likewise extends to [W&O]." The Maldjian AOM does not name or refer to Ward. MG also asserted that the protection afforded by N.J.S.A. 42:1A-18c was unavailable to Ward because W&O lost its status as an LLP when it wound up the law practice without tail insurance.

The motion judge conducted oral argument and issued a written opinion. The judge determined that MG was required to serve Ward with an AOM and failed to do so. He rejected MG's contention that it had substantially complied with the AMS. The judge stated that "[i]f the AOM were the only issue, [then] the complaint would be dismissed."

The judge determined, however, that W&O had not ceased practicing law because W&O collected outstanding legal fees after June 30, 2011. Reading N.J.S.A. 42:1A–18c and Rule 1:21-1C(a)(3) together, the judge concluded that "[t]he condition precedent to attorneys operating as an LLP is [maintaining] malpractice insurance." The judge stated that because W&O allowed its claims-made policy to expire without obtaining tail coverage, W&O's status as an LLP was "relegated . . . to the status of a [GP]." The judge therefore considered W&O to be a GP and found that Ward was no longer "entitled to protection under the UPA." He concluded that MG's service of the Maldjian AOM on W&O satisfied MG's obligations as to Ward under the AMS. He reasoned that service on the entity is considered service on its general partners. The judge then denied Ward's motion.

On appeal, Ward argues that the motion judge acted without legal authority to convert a properly organized LLP into a GP. Ward contends that as a partner in an LLP, he is shielded from

Olivo's liability and that MG's complaint against him should be dismissed with prejudice as a matter of law. Ward also contends that he is entitled to a dismissal of the complaint with prejudice because MG failed to serve him with an AOM or otherwise substantially comply with the AMS.

Because the judge resolved legal questions, we review his conclusions on issues of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). The judge's interpretations of our court rules are similarly reviewed de novo. See Washington Commons, L.L.C. v. City of Jersey City, 416 N.J. Super. 555, 560 (App. Div. 2010), certif. denied, 205 N.J. 318 (2011).

## II.

We begin by addressing Ward's contention that MG's complaint must be dismissed as a matter of law because N.J.S.A. 42:1A-18c shields him from Olivo's alleged malpractice. Ward acknowledges that Rule 1:21-1C(a)(3) required W&O to purchase malpractice insurance. Ward contends, however, that there is no legal authority mandating that partners of an LLP must lose their liability protection if the LLP fails to maintain a tail insurance policy after its ceases the active practice of law. These contentions require us to read N.J.S.A. 42:1A-18c and Rule 1:21-1C(a)(3) together.

A.

Our paramount goal in interpreting N.J.S.A. 42:1A-18c is to ascertain the Legislature's intent, and "generally[] the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). When interpreting a statute, we give words "'their ordinary meaning and significance.'" Tumpson v. Farina, 218 N.J. 450, 467 (2014) (alteration in original) (quoting DiProspero, supra, 183 N.J. at 492).

The plain language of N.J.S.A. 42:1A-18c clearly expresses the Legislative intent that the partners of an LLP are shielded from liability for a fellow partner's acts:

> An obligation of a partnership incurred while the partnership is [an LLP], whether arising in contract, tort, or otherwise, is solely the obligation of the partnership. A partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or so acting as a partner.
>
> [N.J.S.A. 42:1A-18c.]

Without LLP status, "all partners are liable jointly and severally for all obligations of the partnership . . . ." N.J.S.A. 42:1A-18a.

Under the UPA, the status of an LLP remains effective until the LLP itself cancels its status, N.J.S.A. 42:1A-6d, or the LLP's status is revoked by the Department of the Treasury in the event the LLP "fails to file an annual report when due or pay

the required filing fee." N.J.S.A. 42:1A-49c. Nowhere in the UPA did the Legislature state that, when attorneys practice as an LLP, the LLP reverts to a GP if it fails to maintain professional liability insurance, as required by the court rules. See also N.J.S.A. 42:1A-47f (stating that the status of an LLP and the liability of its partners are not affected by errors or later changes in the statement of qualification).

B.

The same principles of statutory construction apply to the interpretation of court rules:

> When interpreting court rules, we ordinarily apply canons of statutory construction . . . . The Court must ascribe to the [words of the rule] their ordinary meaning and significance . . . and read them in context with related provisions so as to give sense to the [court rules] as a whole . . . . If the language of the rule is ambiguous such that it leads to more than one plausible interpretation, the Court may turn to extrinsic evidence.
>
> [Wiese v. Dedhia, 188 N.J. 587, 592 (2006) (alterations in original) (citations and internal quotation marks omitted).]

The plain language of Rule 1:21-1C(a)(3) is not ambiguous. For attorneys to practice law as an LLP, the LLP must maintain malpractice insurance.

> Attorneys may engage in the practice of law as [an LLP] . . . provided that: . . . The [LLP] shall obtain and maintain in good standing one or more policies of lawyers'

> professional liability insurance which shall
> insure the [LLP] against liability imposed
> upon it by law for damages resulting from
> any claim made against the [LLP] by its
> clients arising out of the performance of
> professional services by attorneys employed
> by the [LLP] in their capacities as
> attorneys.[5]
>
> [R. 1:21-1C(a)(3).]

The rules also require that LLPs must comply with all provisions of the UPA and "all rules governing the practice of law by attorneys." R. 1:21-1C(a)(1), (2).

In the exercise of its rulemaking authority, the Supreme Court enumerated specific sanctions against LLPs for failing to comply with Rule 1:21-1C. In 1996, the Court promulgated Rule 1:21-1C(a)(2) stating in pertinent part that "[a]ny violation of [Rule 1:21-1C] by the [LLP] shall be grounds for the Supreme Court to terminate or suspend the [LLP]'s right to practice law or otherwise to discipline it." (Emphasis added). The Court did not include as a sanction the conversion of an LLP into a GP, thereby removing the protection afforded to a partner in an LLP

---

[5] Parallel rules to Rule 1:21-1C for professional corporations and limited liability corporations can be found in Rules 1:21-1A and -1B. These rules similarly provide that professional corporations and limited liability corporations engaged in the practice of law shall obtain and maintain professional liability insurance.

A-3777-13T3

under the UPA, when attorneys practice as an LLP without maintaining professional liability insurance.

It is well-settled that the Legislature is presumed to be aware of the court rules. Cf. Quaremba v. Allan, 67 N.J. 1, 14 (1975). Thus, the Legislature has been aware of Rule 1:21-1C since 1996. The Legislature has decided not to amend the UPA to require an LLP to revert to GP status as a sanction for failing to purchase a tail insurance policy when attorneys practice as an LLP. Therefore, our interpretation of the available sanctions is supported by a long period of legislative acquiescence by failing to amend the UPA. Cf. Macedo v. Dello Russo, 178 N.J. 340, 346 (2004) (indicating that the legislature is presumed to approve consistent judicial interpretations and that courts are "bound by that Legislative acquiescence").

Thus, if attorneys practice as an LLP, and the LLP fails to maintain malpractice insurance as required by the court rules, then the Supreme Court may terminate or suspend the LLP's right to practice law or otherwise discipline it. As currently written, however, the court rules do not authorize a trial court to sanction a partner of an LLP for practicing law as an LLP without the required professional liability insurance by converting an otherwise properly organized LLP into a GP.

11

Although we have concluded that the plain language of the UPA and the court rules are unambiguous, our review of the committee report leading to the Court's adoption of <u>Rule</u> 1:21-1C supports our interpretation.

Nothing in the report of the committee which proposed <u>Rule</u> 1:21-1C suggests any intent to convert an LLP into a GP if the entity failed to carry the required legal malpractice insurance. <u>See</u> <u>Report of the Comm. on the Practice of Law by Ltd. Liab. Cos. and Ltd. Liab. P'ships.</u>, <u>reprinted in</u> 145 <u>N.J.L.J.</u> 308 (1996). Rather, the committee concluded that attorneys should be able to practice as an LLP subject to conditions similar to professional corporations, which include the requirement to carry malpractice insurance. <u>Id.</u> at 310.

Our Supreme Court has chosen to discipline attorneys without malpractice insurance that are organized as professional corporations, rather than dissolve their corporate structure. <u>See e.g.</u>, <u>In re Aponte</u>, 215 <u>N.J.</u> 298, 298-99 (2013) (censuring an attorney for failing to maintain liability insurance while practicing as a professional corporation in violation of <u>R.</u> 1:21-1A(a)(3)); <u>In re Muldoon</u>, 213 <u>N.J.</u> 79 (2013) (same); <u>see also</u> <u>In re Tiffany</u>, 217 <u>N.J.</u> 519, 520 (2014) (disbarring an attorney for, among other things, violating the rule requiring

professional corporations to file a certificate of insurance with the Clerk of the Supreme Court).[6]

We also note that because the plain language of the UPA and our Rules of Court does not permit a trial court to convert an LLP to a GP when a law firm fails to maintain a tail insurance policy, we cannot assume the Legislature or our Supreme Court intended such a result. See DiProspero, supra, 183 N.J. at 492 (indicating that "[i]t is not the function of [an appellate court] to 'rewrite a plainly-written enactment of the Legislature [] or presume that the Legislature intended something other than that expressed by way of the plain language.'" (second alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002))). Only the Legislature can amend the UPA, or our highest court can revise Rule 1:21-1C, to make such an outcome explicitly clear.

Therefore, we disagree with the trial court's conclusion that, as a matter of law, W&O was converted from an LLP to a GP when it failed to purchase a tail insurance policy. Ward is

---

[6] Whether winding up their law practice by collecting legal fees constitutes "practicing law" as an LLP and whether Ward and Olivo should be censured or otherwise disciplined for failing to purchase a tail insurance policy for the LLP may be issues appropriate for consideration by the Office of Attorney Ethics, the Disciplinary Review Board, or a district ethics committee. R. 1:20-1.

thus shielded from personal liability in this case because of W&O's LLP status.

### III.

Ward argues that, even if he is not shielded from personal liability as a partner of W&O, the complaint against him should have been dismissed with prejudice because MG did not comply with the AMS. We agree.

A plaintiff filing a lawsuit alleging "malpractice or negligence by a licensed person in his profession or occupation . . . shall . . . provide each defendant" with an AOM. N.J.S.A. 2A:53A-27. The AOM must explain "that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." Ibid.

If the AOM is not filed within the time required by the AMS and the defendant moves to dismiss, then the action will usually be dismissed with prejudice. Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 422 (2010). The requirement to serve an AOM also applies, as in this case, where a plaintiff "wishes to invoke principles of vicarious liability" against partners of a law firm for a fellow partner's malpractice or negligence. See Shamrock Lacrosse, Inc. v.

Klehr, Harrison, Harvey, Branzburg & Ellers, L.L.P., 416 N.J. Super. 1, 23 (App. Div. 2010) (noting that "[i]ndeed, the wording of the [AMS] contemplates such potential vicarious liability").[7]

Two equitable remedies temper an inflexible application of the AMS. "A complaint will not be dismissed if the plaintiff can show that he has substantially complied with the statute." Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 151 (2003). Even in the absence of substantial compliance, "a complaint will be dismissed without prejudice if there are extraordinary circumstances to explain noncompliance." Ibid.

Here, MG argued that it substantially complied with the AMS. "The doctrine of substantial compliance is an equitable one which is utilized 'to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose.'" Cnty. of Hudson v. State, Dep't

---

[7] However, an AOM may be unnecessary in some vicarious liability contexts. See, e.g., Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 599 (App. Div.) (instructing that an AOM from a qualified engineer is not needed to support a complaint against an engineering firm, if the claims are limited to "the doctrines of respondent superior or agency" arising out of alleged negligence of a hydrogeologist "employed by or working for" that firm, although an AOM from an engineer would be required for claims of negligent supervision, negligent hiring, or any other alleged breach of the engineering firm's own professional standards of care), certif. denied, 168 N.J. 294 (2001).

of Corr., 208 N.J. 1, 21 (2011) (quoting Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 352 (2001)). The doctrine requires MG to show

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of [a plaintiff's] claim; and (5) a reasonable explanation why there was not strict compliance with the statute.
> [Ferreira, supra, 178 N.J. at 151 (citation and internal quotation marks omitted).]

We agree with the judge's well-reasoned determination that MG failed to substantially comply with the AMS. In reaching that conclusion, the judge stated that

> the [c]ourt finds that there is real prejudice to Ward, since he is uninsured and his personal assets would be at risk. Moreover, there were no deliberate, thoughtful steps taken to comply with the statute, the purpose of the statute was essentially ignored, there was no reasonable notice of the claim as to Ward personally and no remotely reasonable explanation of why there was not strict compliance.

As a result of failing to serve an AOM on Ward or substantially comply with the AMS, MG's complaint against Ward must be dismissed with prejudice. See N.J.S.A. 2A:53A-29 (providing that failure to comply with the AMS is tantamount to failure to state a cause of action).

We reverse, remand, and direct the judge to enter an order dismissing the complaint against Ward with prejudice.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION