NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2272-20

HOLLYWOOD CAFÉ
DINER, INC.,

      Plaintiff-Appellant,

v.

GERI JAFFEE, ESQUIRE
and MARKS, O'NEILL,
O'BRIEN, DOHERTY &
KELLY, P.C.,

      Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

July 15, 2022

APPELLATE DIVISION

Argued May 23, 2022[1]
Reargued July 7, 2022 – Decided July 15, 2022

Before Judges Messano, Accurso, and Rose.

On appeal from the Superior Court of New Jersey,
Law Division, Camden County, Docket No.
L-2786-19.

Richard P. Coe, Jr. argued the cause for appellant
(Weir Greenblatt Pierce, LLP, attorneys; Richard P.
Coe, Jr., on the briefs).

_____

[1] As Judge Accurso was added after oral argument, the appeal was reargued
pursuant to Rule 2:13-2(b).

Robert A. Berns argued the cause for respondents (Kaufman Dolowich & Voluck, LLP, attorneys; Robert A. Berns and Timothy M. Ortolani, of counsel and on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Plaintiff Hollywood Café Diner, Inc., (the Diner) filed this legal malpractice action against defendants alleging they negligently represented the Diner in a dram shop case brought by Kevin P. Fynes, a patron who participated in a "Pub Crawl" on St. Patrick's Day 2012. Fynes visited a series of pubs before stopping at the Diner. He left in an intoxicated state and was seriously injured in a single-car accident when he failed to negotiate a curve in the road. Liberty International Underwriters insured the Diner at the time and retained defendants' firm (the Firm) to represent the Diner in the Fynes litigation. Defendant Geri Jaffee primarily handled the defense, settling the case for $1.5 million.

In its malpractice complaint, the Diner alleged Jafee and the Firm (collectively, defendants) breached their professional duties by failing to: investigate the accident; disclose, consult, or discuss the settlement with it; and include a confidentiality provision in the settlement agreement. By way of example, the Diner asserted defendants negligently failed to name the other taverns Fynes visited on the pub crawl as co-defendants. The Diner asserted

defendants' negligence caused it to suffer damages, including fines levied by the Division of Alcoholic Beverage Control and increased insurance premiums, as well as adverse publicity. The Diner supplied an affidavit of merit which stated, "there exist[ed] a reasonable probability that the care, skill or knowledge exercised or exhibited by [defendants] . . . fell outside the acceptable professional standards for attorneys."

Defendants filed an answer in September 2019, and discovery commenced in halting fashion. Because the procedural history is critical to the issues now raised, we recount it in detail.

## I.

Both parties served demands for written discovery in October 2019, but neither answered their adversary's requests. Meanwhile, the court referred the case to mediation in January 2020; that was unsuccessful. On October 3, 2020, the court notified both parties the discovery end date (DED) was December 13, 2020, apparently sparking defendants' November 3 response to the Diner's discovery demand by supplying more than 6000 pages of documents.[2] The Diner claimed it never saw most of those documents during

---

[2] The case was designated a Track IV case, with 450 days of discovery. See R. 4:5A-1; Pressler & Verniero, Current N.J. Court Rules, Appendix XII (2022).

the Fynes litigation. The next day defendants wrote the Diner demanding responses to their discovery requests.

Also on November 4, 2020, although the DED had not passed, the court sent the parties notice that trial was set for March 8, 2021. With defendants' consent, the Diner's counsel wrote the judge pursuant to Rule 4:24-1(c) requesting a sixty-day extension of the DED to February 11, 2021. The only response in the record is the court's November 9, 2020 notice adjourning the trial date three weeks, to March 29, 2021, however, it is apparent from later proceedings that the court extended the DED to February 11, 2021.

On December 7, 2020, defendants moved to dismiss the complaint without prejudice because the Diner still had not served discovery responses; however, the motion was withdrawn ten days later when the discovery arrived. On January 6, 2021, while still asserting deficiencies in the Diner's responses, defendants moved to extend discovery. Counsel's certification noted the Diner's consent and asserted the "good cause" standard applied to the motion because the DED had not expired. See R. 4:24-1(c). Defendants' proposed order included dates for the service of experts' reports, fact and expert depositions, and extended the DED to June 7, 2021.

On January 21, 2021, in an oral opinion consisting of twenty-three transcript lines, the judge denied defendants' motion. He noted the inactivity

A-2272-20

between service of discovery requests in October 2019, and responses in late 2020, concluding "nothing happened, nothing was scheduled, no expert reports served, depositions taken or anything of this nature." Recognizing arbitration and trial dates were already set, the judge determined no exceptional circumstances existed.

The Diner moved for reconsideration, and, although it sought oral argument, none occurred. In an oral opinion issued on the record, a second judge reviewed the procedural history of the litigation, noting, "through no fault of their own, the parties have had to navigate circumstances of Covid." The judge also recognized the Diner's principal contracted the disease and its counsel lost personnel at its firm, but observing there had been 510 days of discovery, she said, "It is still not clear . . . why [the parties] would wait such an extraordinary amount of time." The judge concluded the Diner failed to "satisf[y its] burden under Rule 4:49-2," and denied the motion. She entered a conforming order on February 19, 2021.

In the interim, on January 27, defendants moved for summary judgment, essentially arguing the Diner provided no expert opinion regarding the alleged professional negligence, and having failed to do so, summary judgment was appropriate. See, e.g., Buchanan v. Leonard, 428 N.J. Super. 277, 288–89 (App. Div. 2012) (citations omitted) (recognizing generally expert testimony is

5

necessary to sustain a legal malpractice claim). The Diner immediately served a deposition notice on defendant Jaffee, but defense counsel refused to produce her as a witness unless the court granted the pending reconsideration motion. The Diner cross-moved for an order re-opening discovery and compelling Jaffee's deposition.

The motion and cross-motion were heard by the second judge. Concluding the lack of expert opinion was fatal to the Diner's complaint, the judge granted defendants' summary judgment. She denied the Diner's cross-motion and entered conforming orders on March 5, 2021.

II.

The Diner contends the first judge mistakenly exercised his discretion by denying defendants' motion to extend discovery because he applied the "exceptional circumstances" standard instead of the "good cause" standard in deciding the motion. Despite supporting their motion to extend discovery by asserting the "good cause" standard applied, defendants now say the first judge did not abuse his discretion because there were no "exceptional circumstances" justifying a discovery extension.

The Diner also argues the second judge should have denied summary judgment because the jury could find defendants breached their duty without expert testimony. Defendants counter by contending expert testimony was

6

essential. Because we agree with the Diner's first point, we reverse without considering its second point.

"An appellate court applies 'an abuse of discretion standard to decisions made by [the] trial courts relating to matters of discovery.'" C.A. by Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). "It 'generally defer[s] to a trial court's disposition of discovery matters unless the court has abused its discretion[,] or its determination is based on a mistaken understanding of the applicable law.'" Ibid. (first alteration in original) (quoting Pomerantz Paper Corp., 207 N.J. at 371).

However, "we review legal determinations based on an interpretation of our court rules de novo." Occhifinto v. Olivo Constr. Co., LLC, 221 N.J. 443, 453 (2015) (citing State ex rel. A.B., 219 N.J. 542, 554–55 (2014)). In that regard, "[w]e apply the same canons of construction to a court rule that we apply to a statute." Cadre v. Proassurance Cas. Co., 468 N.J. Super. 246, 263 (App. Div. 2021) (citing Mortg. Grader, Inc. v. Ward & Olivo, LLP, 438 N.J. Super. 202, 210 (App. Div. 2014), certif. denied, 249 N.J. 338 (2021)).

Rule 4:24-1(c) permits the parties to extend discovery for sixty days "prior to the expiration of the discovery period" by written consent. If a longer extension is sought, "a motion for relief shall be filed . . . and made returnable

prior to the conclusion of the applicable discovery period." <u>Ibid.</u> "[I]f <u>good cause</u> is otherwise shown, <u>the court shall enter an order extending discovery</u>." <u>Ibid.</u> (emphasis added). However, "[n]o extension of the discovery period <u>may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown</u>." <u>Ibid.</u> (emphasis added).

We have recognized the obvious. The good cause standard is "more lenient" and "'flexible . . .' without a fixed or definite meaning." <u>Bldg. Materials Corp. of Am. v. Allstate Ins. Co.</u>, 424 N.J. Super. 448, 480 (App. Div. 2012) (quoting <u>Tynes ex rel. Harris v. St. Peter's Univ. Med. Ctr.</u>, 408 N.J. Super. 159, 169 (App. Div. 2009)). We have identified a non-exhaustive list of nine factors courts may consider in determining whether good cause exists in this context. <u>Ibid.</u> (quoting <u>Tynes</u>, 408 N.J. Super. at 169–70). In contrast, under the more rigorous exceptional circumstances standard, the movant must demonstrate

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) <u>the additional discovery or disclosure sought is essential</u>; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) <u>the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time</u>.

[Rivers v. LSC P'ship, 378 N.J. Super. 68, 79 (App. Div. 2005) (emphasis added) (citing Vitti v. Brown, 359 N.J. Super. 40, 51 (Law Div. 2003)).]

This appeal asks us to decide which standard applies if a motion to extend discovery is made before discovery ends — when the court shall grant the motion for good cause — but after a trial date is set — when the court may grant the motion only if exceptional circumstances exist.

It is readily apparent that a court could render meaningless the "good cause" standard applicable to motions to extend discovery that are timely filed before expiration of the DED by simply assigning an arbitration or trial date early in the litigation. Nothing in the Rules specifically prohibits the court from doing so. However, as with a statute, we strive to construe a court rule so as "to avoid rendering any part . . . inoperative, superfluous or meaningless." MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 318 (App. Div. 2020) (citing Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013)).

Reading our Part IV Rules in pari materia further demonstrates why the practice of setting a trial date while discovery is ongoing, at the least, creates confusion. See ibid. (noting statutes "that deal with the same matter or subject should be read in pari materia . . . as a unitary and harmonious whole" (quoting

<u>Nw. Bergen Cnty. Utils. Auth. v. Donovan</u>, 226 N.J. 432, 444 (2016))). <u>Rule</u>
4:36-2, for example, provides:

> The court shall send a notice to each party to the
> action [sixty] days prior to the end of the prescribed
> discovery period. The notice shall advise that if an
> extension of the discovery period is required,
> application therefor must be made prior to its
> expiration and that if no such application is made, the
> action shall be deemed ready for trial.

The plain language of the <u>Rule</u> requires the court to advise the parties of the
impending DED, and that if an extension is necessary, they must file a motion
within the next sixty days. The <u>Rule</u> also specifically tells the parties that "if
no such application is made," the case is deemed ready for trial.

We recognize "[t]he critical aim of [the 2000 Rule Amendments was] the
establishment of a realistic arbitration and trial date." <u>Leitner v. Toms River
Reg'l Schs.</u>, 392 N.J. Super. 80, 90–91 (App. Div. 2007) (citing <u>Report of the
Conference of Civil Presiding Judges on Standardization and Best Practices</u>,
156 N.J.L.J. 80, 82 (April 5, 1999)). But, that laudable goal is not served
when <u>the court</u> notifies the parties that a discovery extension motion must be
brought within the next sixty days or the case "shall be deemed" ready for trial,
and at the same time, or, as in this case, halfway through the sixty day period,
the court sets the actual trial date.

The mixed messages caused by these two notices might cause nothing more than confusion, except, as occurred here, the setting of a trial date triggered the "exceptional circumstances" standard for a discovery extension request essentially sought by both parties in a timely manner as permitted by Rule 4:24-1(c).  And, denial of the extension that defendants initially sought certainly contributed to the ultimate dismissal of the complaint on summary judgment.

We also consider the effect of the "exceptional circumstances" standard once an arbitration or trial date is set during discovery in conjunction with the timeframes governing summary judgment practice.  Rule 4:46-1 requires all motions for summary judgment be made "returnable no later than [thirty] days before the scheduled trial date, unless the court otherwise orders for good cause shown."  The motion "shall be served and filed not later than [twenty-eight] days before the time specified for the return date."  Ibid.  For all intents and purposes, summary judgment motions must be filed almost sixty days before the trial date.

In this case, in order to meet the requirements of Rule 4:46-1, defendants filed their summary judgment motion nearly two weeks before the DED of February 11.  Although the additional two weeks may not have mattered here, and there are exceptions that we need not explore, "in general, 'summary

11

judgment is inappropriate prior to the completion of discovery.'" Mohamed v. Iglesia Evangelica Oasis De Salvacion, 424 N.J. Super. 489, 498 (App. Div. 2012) (quoting Wellington v. Est. of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)).

Lastly, we can cite no more authoritative source than Judge Pressler regarding what the significant 2000 Rule amendments, including those made to Rule 4:24-1, were intended to achieve and to avoid.

> The Best Practices rules were "designed to improve the efficiency and expedition of the civil litigation process and to restore state-wide uniformity in implementing and enforcing discovery and trial practices." They were not designed to do away with substantial justice on the merits or to preclude rule relaxation when necessary to "secure a just determination."
>
> [Tucci v. Tropicana Casino & Resort, Inc., 364 N.J. Super. 48, 53 (App. Div. 2003) (emphasis added) (first quoting Vargas v. Camilo, 354 N.J. Super. 422, 425 n.1 (App. Div. 2002); and then quoting R. 1:1-2).]

We have no idea how widespread the practice of setting an arbitration or trial date before discovery ends is among trial courts, but our point here is not to criticize the practice of sending out arbitration and trial notices before the end of discovery, although doing so causes obvious tension among a series of rules designed to foster trial date certainty. The capable presiding judges and

12

managers of the Civil Division in the various vicinages know best how to manage the court's calendar.

However, the use of such an administrative tool only fosters the unintended, adverse consequences cited by Judge Pressler if <u>Rule</u> 4:24-1(c) is applied mechanistically. We conclude when the court chooses to send out arbitration and trial notices during the discovery period, judges evaluating a timely motion to extend discovery may not utilize the "exceptional circumstances" standard, but rather the judge "shall enter an order extending discovery" upon a showing of "good cause." <u>R.</u> 4:24-1(c). Our construction of the <u>Rule</u> is consonant with its plain language and gives meaning to all its terms, is consistent with the purposes of other rules designed to set realistic trial dates, and favors the general policy of adjudicating litigation on its merits.

We also conclude in this case the Diner established good cause for a further extension of discovery. As noted, the parties served paper discovery demands on each other in fall 2019. In January 2020, the court ordered the parties to mediation, which was unsuccessful. On March 27, 2020, the Court issued its First Omnibus order that, among other things, suspended all jury trials, further extended all discovery time periods, and postponed civil arbitration sessions.

13

We need not detail the orders that followed, however, it suffices to say that the Court's Tenth Omnibus Order, issued February 17, 2021, approximately a month after the first judge denied defendants' motion to extend discovery said: "In recognition of the pervasive and severe effects of the COVID-19 public health crisis, the court in any individual matter consistent with <u>Rule</u> 1:1-2(a) may suspend proceedings, <u>extend discovery</u> or other deadlines, or otherwise accommodate the legitimate needs of parties, attorneys, and others in the interests of justice."[3]  Additionally, all court locations were not reopened to the public until August 2, 2021.  Further, as the second judge noted on reconsideration, the effects of COVID-19 on the court system in this state, and this litigation, were pervasive.

We have no idea whether the Diner will be able to obtain the expert opinion that is likely necessary to prove its malpractice case.  We only hold it was error to deny a further extension of discovery that may have provided that evidence.  We therefore reverse the order granting defendants' summary judgment, as well as the orders that effectively denied any further discovery to both parties.  We remand the matter to the trial court to appropriately manage

---

[3]  The same language was included in the Eleventh Omnibus Order, issued March 23, 2021

discovery going forward, leaving the terms and conditions for any extension of the discovery period and proceedings that follow to the trial court's discretion.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2272-20