**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3103-23

LINA M. RAMIREZ,
individually, as
Administratrix and
Administratrix ad
Prosequendum for the
ESTATE OF WILLIAM
RAMIREZ,

      Plaintiff-Respondent,

v.

CARE ONE, LLC, and
CARE ONE AT TEANECK,
LLC,

      Defendants-Appellants.

_____

          Argued October 29, 2024 – Decided November 25, 2024

          Before Judges Gilson and Firko.

          On appeal from an interlocutory order of the Superior
          Court of New Jersey, Law Division, Bergen County,
          Docket No. L-1239-22.

Anthony Cocca argued the cause for appellant (Cocca & Cutinello, LLP, attorneys; Anthony Cocca and Katelyn E. Cutinello, of counsel and on the brief).

Juan C. Fernandez argued the cause for respondent (Fernandez Garcia, LLC, attorneys; Juan C. Fernandez, on the brief).

PER CURIAM

On leave granted, defendants CareOne, LLC and CareOne at Teaneck, LLC (defendants or CareOne) appeal from an April 24, 2024 order denying their motion to dismiss plaintiffs' complaint for failure to submit an appropriate affidavit of merit. Defendants also argue that plaintiffs have failed to set forth facts showing gross negligence and, therefore, plaintiffs' claims are barred by the COVID-19 immunity statute, L. 2020, c. 18. Having reviewed the record and governing law, we reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

I.

William Ramirez was a resident at defendant at CareOne at Teaneck, rehabilitation facility, owned by defendant CareOne. He had been admitted for rehabilitation following hip surgery shortly after the World Health Organization declared COVID-19 a global pandemic. He contracted COVID-19 during his

stay at defendants' facility and died on April 18, 2020, from complications of the virus.

Plaintiff, the estate of William Ramirez, filed a four-count complaint against defendants and fictitious entities generally alleging wrongful death and damages under the New Jersey Survival Act, N.J.S.A. 2A:15-3. Plaintiff alleged defendants rendered medical care and treatment to decedent in a "wanton, willful, reckless and/or negligent manner constituting professional negligence." Plaintiff also alleged these actions were not immune under the law as defendants "were aware [of] other individuals who were positive for COVID[-19] . . . and failed to take proper actions to protect [decedent]."

Defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2(c) and (e) contending they were immune from civil liability for healthcare professionals and facilities providing medical services under the New Jersey COVID-19 Immunity Statute, L. 2020, c. 18. The trial court granted defendants' motion to dismiss pursuant to Rules 4:6-2(c) and (e) without prejudice, finding the motion to dismiss was warranted because of the lack of specificity in plaintiff's complaint.. The trial court granted plaintiff leave to file an amended complaint within forty-five days.

A-3103-23

Plaintiff filed a motion for leave to file and serve an amended complaint, which essentially alleged the same allegations against defendants as the initial complaint but also included claims for "gross negligence." Relevant here, plaintiffs stated the following in the amended complaint:

> 124. Despite representations to the contrary, it appears that the facility reported [ten] COVID[-19] cases as of April 18, 2020. . . . On April 20, 2020, [sixty-five] COVID[-19] cases and [twenty-one] deaths were reported in the N.J. [l]ong [t]erm [c]are [f]acilities with COVID-19 [c]ases [r]eport . . . .
>
> 125. Despite the susceptibility of death in elderly patients in the facility and representations of no positive results, in reportage it was stated that [defendants' facility] in fact took in positive COVID [-19] patients and represented they could safely take more COVID[-19] patients. The reportage indicated deaths "soared" thereafter . . . .
>
> 126. Prior to the COVID[-19] outbreak and subsequent thereto[,] [defendants' facility] has been cited with multiple violations and procedures were simply not followed by [defendants' facility] . . . .

Defendants filed a cross-motion to dismiss the complaint with prejudice. The trial court granted plaintiff's motion to amend the complaint and denied defendants' cross-motion to dismiss with prejudice. We denied defendants' motion for leave to appeal.

4

Defendants filed an answer to the amended complaint and requested a Ferreira[1] conference. The trial court instructed plaintiff to serve an Affidavit of Merit (AOM) as required by N.J.S.A. 2A:53A-26 to -29. Defendants then moved to dismiss the amended complaint with prejudice on the grounds that plaintiff failed to serve an AOM from a properly licensed individual. Plaintiff filed a cross-motion to extend time to serve an AOM. On October 20, 2023, the trial court denied defendants' motion to dismiss and granted plaintiff's cross-motion to extend time to serve an AOM and entered two orders.

On November 9, 2023, plaintiff served an AOM authored by Gregg Davis, M.D., M.B.A. According to his curriculum vitae, Dr. Davis is board certified in family medicine who specializes in geriatrics and has "[t]hirty years of experience as a skilled care nursing facility director and attending physician." Dr. Davis certified that defendants breached the standard of care in light of decedent's symptoms, progress of the pandemic, his roommate's symptoms, and failed to provide a COVID-19 test at the family's request.

---

[1] See Moshella v. Hackensack Meridian Jersey Shore Univ. Med. Ctr., 258 N.J. 110, 113-14 (2024) ("Issues regarding the expert affidavit—the [Affidavit of Merit (AOM)]—are to be resolved at an accelerated case management conference conducted by the trial court in accordance with Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55 (2003), otherwise known as a Ferreira conference.")

A-3103-23

Defendants objected to Dr. Davis's AOM, asserting he was not qualified to offer standard of care opinions against the nursing staff at defendants' facility. Defendants also advised plaintiff that to the extent the claims were premised on vicarious liability or for the conduct of "licensed persons" under the AOM, plaintiff "must identify . . . specific individual(s) . . . alleged to be negligent and provide an [AOM] against that 'licensed person' from a similarly qualified 'licensed person.'" Specifically, defendants alleged Dr. Davis targeted "the facility and staff of CareOne" in his AOM, without identifying a specific licensed person. Defendants sent a letter to the trial court objecting to the AOM. On December 28, 2023, we denied defendants' motion for leave to appeal the October 20, 2023 orders.

On February 29, 2024, defendant filed a motion to dismiss plaintiff's amended complaint with prejudice for failure to comply with the AOM statute. On April 24, 2024, the trial court denied both defendants' motions to dismiss. The trial court found decedent was admitted to CareOne at Teaneck for hip rehabilitation not for COVID-19 treatment. Since plaintiff alleged defendant did not provide basic medical care to decedent, the trial court determined that the first exception to the immunity afforded under the Immunity Statute did not apply.

6

In addition, the trial court found CareOne's administrative failures allegedly created an unconscionable risk of harm to decedent that falls under the definition of "gross" negligence because defendants allegedly failed to follow Center for Disease Control guidelines and implement COVID-19 protocols, which plaintiff claims caused decedent's condition to deteriorate and made him susceptible to COVID-19. A memorializing order was entered. Defendants moved for and we granted leave to appeal.

On appeal, defendants present two arguments for our consideration:

> (1) The amended complaint must be dismissed with prejudice because plaintiff failed to submit an AOM from an appropriate licensed person; and
>
> (2) Dr. Davis's AOM demonstrates that this lawsuit should be dismissed with prejudice pursuant to New Jersey's COVID-19 [I]mmunity [S]tatute.

II.

We begin our discussion with a review of the principles governing our analysis. Rule 4:6-2 provides:

> Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses, . . . may at the option of the pleader be made by motion, with briefs: . . . (e) failure to state a claim upon which relief can be granted . . . .

[R. 4:6-2(e).]

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). Thus, "we owe no deference to the trial judge's conclusions." State ex rel. Comm'r of Transp. v. Cherry Hill Mitsubishi, Inc., 439 N.J. Super. 462, 467 (App. Div. 2015) (citing Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)).

"At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of [a] plaintiff[] to prove the allegation contained in the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Somers Constr. Co. v. Bd. of Educ., 198 F.Supp. 732, 734 (D.N.J. 1961)). "For purposes of analysis [a] plaintiff[ is] entitled to every reasonable inference of fact." Ibid. (citing Indep. Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 (1956)). "The examination of a complaint's allegations of fact . . . should be one that is at once painstaking and undertaken with a generous and hospitable approach." Ibid.

In undertaking our review,

> it is essential to canvass the complaint to determine whether a cause of action can be found within its four corners.  In so doing, we must accept the facts asserted in the complaint as true.  A reviewing court must search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned from an obscure statement of claim, opportunity being given to amend if necessary. Accordingly, all reasonable inferences are given to plaintiff.  Courts should grant these motions with caution and in the rarest instances.
>
> [Ballinger v. Del. River Port Auth., 311 N.J. Super. 317, 321-22 (App. Div. 1998) (internal quotation marks and citations omitted) (alteration in original).]

The New Jersey Supreme Court has made it clear, "[i]f a complaint must be dismissed after it has been accorded the . . . meticulous and indulgent examination . . . then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint."  Printing Mart-Morristown, 116 N.J. at 772.  In other words, only if an insufficient pleading could not be corrected by amendment, should it be dismissed with prejudice at this stage.

The submission of an appropriate AOM is an element of a professional malpractice claim.  Meehan v. Antonellis, 226 N.J. 216, 228 (2016).  Failure to provide an AOM is "deemed a failure to state a cause of action."  N.J.S.A.

9

2A:53A-29. "The failure to deliver a proper affidavit within the statutory time period requires a dismissal of the complaint with prejudice." Ferreira, 178 N.J. at 146-47.

Pursuant to N.J.S.A. 2A:53A-27, in any action for damages resulting from an alleged act of malpractice or negligence by a licensed person as defined by the statute, the plaintiff must:

> within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

The purpose of the statute is "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Ferreira, 178 N.J. at 150 (quoting Hubbard v. Reed, 168 N.J. 387, 395 (2001)). Pursuant to the statute, a plaintiff must provide a defendant with "an affidavit that indicates the plaintiff's claim has merit." Fink v. Thompson, 167 N.J. 551, 559-60 (2001).

These principles can extend to certain vicarious liability claims. An AOM is required "when the plaintiff's claim of vicarious liability hinges upon allegations of deviation from professional standards of care by licensed

10

individuals who worked for the named defendant."  Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 250 N.J. 368, 381 (2022) (quoting McCormick v. State, 446 N.J. Super. 603, 615 (App. Div. 2016)).  Registered professional nurses fall within the definition of "licensed person" under the AOM statute. N.J.S.A. 2A:53A-26(i).  Therefore, a plaintiff is required to serve an AOM to support a claim of vicarious liability based on the alleged professional negligence of a registered nurse.

In medical malpractice actions, the person executing the affidavit must meet the same requirements that would be required of an expert at trial. Haviland, 250 N.J. at 377-78.  The AOM "must explain 'that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.'"  Mortg. Grader, Inc. v. Ward & Olivo, L.L.P., 438 N.J. Super. 202, 213 (App. Div. 2014) (quoting N.J.S.A. 2A:53A-27).

In terms of the AOM statute, we recently stated:

> An AOM is required "when the plaintiff's claim of vicarious liability hinges upon allegations of deviation from professional standards of care by licensed individuals who worked for the named defendant." Haviland, 250 N.J. at 381 (quoting McCormick, 446 N.J. Super. at 615). Registered professional nurses fall within the definition of "licensed person" under the AOM statute.  N.J.S.A. 2A:53A-26(i). Therefore, a

11

plaintiff is required to serve an AOM to support a claim of vicarious liability based on the alleged professional negligence of a registered nurse.

In medical malpractice actions, the person executing the affidavit must meet the same requirements that would be required of an expert at trial. Id. at 377-78. The AOM "must explain 'that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.'" Mortg. Grader, Inc., 438 N.J. Super. at 213 (quoting N.J.S.A. 2A:53A-27).

[Hargett v. Hamilton Park OPCO, LLC, 477 N.J. Super. 390, 396-97 (App. Div. 2023), cert. denied, 256 N.J. 453 (2024).]

In Hargett, the AOM submitted did not name any individual negligent persons. Id. at 394. Instead the AOM stated the following:

based upon a review of [the medical] records [of Ingram] and other circumstances as [she] understand[s] them to be, . . . there exists a reasonable probability that the care, skill, or knowledge exercised in the treatment provided by Alaris [Health] . . . and Jersey City Medical Center, and members of their nursing and nursing administrative staff, fell outside acceptable professional standards and was the cause of harm to . . . [plaintiff].

[Ibid. (alterations in original).]

Here, we conclude plaintiff is barred from asserting any professional negligence claims against any physician or staff at CareOne. By plaintiff's own

12

admission, Dr. Davis's AOM does not address those claims. Moreover, plaintiff's amended complaint does not allege any deviation or departure from the standard of care against any healthcare provider.

Instead, the amended complaint is limited to solely an administrative claim against CareOne. The unresolved issue here, based upon our review of the record, is lack of discovery as to the identity of the individuals who were employed by or designated by defendant to implement COVID-19 protocols during the relevant timeframe and what their areas of expertise are.

The AOM statute requires that a plaintiff "provide each defendant with an affidavit . . . that there exists a reasonable probability that the care . . . exercised or exhibited in the treatment . . . fell outside acceptable . . . treatment practices." N.J.S.A. 2A:53A-27. Generally, an AOM should identify the licensed person who allegedly deviated from the acceptable standard of care. Medeiros v. O'Donnell & Naccarto, Inc., 347 N.J. Super. 536, 542 (App. Div. 2002). That is not to say an AOM must always name the licensed person who is the subject of a vicarious liability claim.

A number of decisions considered and accepted an AOM that did not identify the licensed person by name. In each case, however, it was possible to identify by the description within the AOM the licensed person or entity alleged

to have deviated from the applicable standard of care. See, e.g., ibid. (AOM referred to engineers and there was only one engineering firm); Fink, 167 N.J. at 551 (doctor who discontinued certain medication was identifiable); Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 358 (2001) (unnamed radiologist was identifiable).

Here, it is not possible to identify any CareOne professionals who were negligent because Dr. Davis's AOM refers generally to "institutionalized failures to implement mandatory procedures and policy required for facilities during the COVID[-19] crisis." Plaintiff admittedly did not satisfy the obligation as to CareOne personnel by serving an AOM that opines collectively as to the institutionalized failures during the pandemic. Plaintiff was required to "provide each defendant" with an appropriate AOM and failed to do so. Therefore, based upon our de novo review, we reverse, in part, the April 24, 2024 order, and hold that any professional negligence counts and claims alleged in plaintiff's amended complaint are dismissed with prejudice.

III.

A.

However, we conclude plaintiff has sufficiently alleged enough facts at this juncture to support a claim for gross negligence, as alleged in the amended complaint. The Immunity Statute provides:

(a) The Legislature finds and declares:

This statement of legislative intent is made to establish clearly our intent because of the lack of committee hearings. This statement shall be made an official part of the record in establishing this Legislature's intent.

It has been reported that this bill would grant immunity to all medical doctors and healthcare workers in New Jersey for all inpatient or outpatient procedures or any medical treatment rendered during the timeframe of the COVID-19 emergency. This is not an accurate statement.

The enactment of this bill is to ensure that there are no impediments to providing medical treatment related to the COVID-19 emergency and that all medical personnel supporting the COVID-19 response are granted immunity.

However, medical care rendered in the ordinary course of medical practice does not provide the granting of immunity. For example, procedures performed by licensed medical professionals in their ordinary course of business, including orthopedic procedures, OB/GYN services, and necessary cardiological procedures.

A-3103-23

It is not the Legislature's intent to grant immunity for medical services, treatment and procedures that are unrelated to the COVID-19 emergency.

(b) As used in this section:

"Health care facility" means any healthcare facility as defined in section 2 of P.L.2005, c. 222 (C.26:13-2), and any modular field treatment facility and any other site designated by the Commissioner of Health for temporary use for the purpose of providing essential services in support of the State's response to the outbreak of Coronavirus disease during the public health emergency and state of emergency declared by the Governor in Executive Order 103 of 2020.

"Health care professional" means a physician, physician assistant, advanced practice nurse, registered nurse, licensed practical nurse, or other health care professional whose professional practice is regulated pursuant to Title 45 of the Revised Statutes or who is otherwise authorized to provide health care services in this State, an emergency medical technician or mobile intensive care paramedic certified by the Commissioner of Health pursuant to Title 26 of the Revised Statutes or who is otherwise authorized to provide health care services in this State, and a radiologic technologist regulated pursuant to Title 26 of the Revised Statutes or who is otherwise authorized to provide health care services in this State.

(c) Notwithstanding the provisions of any law, rule, or regulation to the contrary:

(1) a health care professional shall not be liable for civil damages for injury or death alleged to have been sustained as a result of an act or omission by the health care professional in the course of providing medical

services in support of the State's response to the outbreak of coronavirus disease during the public health emergency and state of emergency declared by the Governor in Executive Order 103 of 2020; and

(2) a health care facility or a health care system that owns or operates more than one health care facility shall not be liable for civil damages for injury or death alleged to have been sustained as a result of an act or omission by one or more of its agents, officers, employees, servants, representatives or volunteers, if, and to the extent, such agent, officer, employee, servant, representative or volunteer is immune from liability pursuant to paragraph (1) of this subsection.

Immunity shall also include any act or omission undertaken in good faith by a health care professional or healthcare facility or a health care system to support efforts to treat COVID-19 patients and to prevent the spread of COVID-19 during the public health emergency and state of emergency declared by the Governor in Executive Order 103 of 2020, including but not limited to engaging in telemedicine or telehealth, and diagnosing or treating patients outside the normal scope of the health care professional's license or practice. The immunity granted pursuant to this subsection shall not apply to acts or omissions constituting a crime, actual fraud, actual malice, gross negligence, recklessness, or willful misconduct, and shall be retroactive to March 9, 2020.

We recently held that a health and rehabilitation facility owed no duty to a recently released patient who tested positive for COVID-19 after she left the facility and then transmitted COVID-19 to her husband. This court stated:

> Plaintiff does not dispute the Immunity Statute extends to defendants. And we have no hesitation in holding the Statute plainly altered the scope of any common law duty defendants owed to Mrs. Campbell, and derivatively to plaintiff's decedent Mr. Campbell. See Lafage v. Jani, 166 N.J. 412, 460 (2001) (LaVecchia, J., dissenting) (noting "[t]he Legislature is free to expand, modify, or abrogate common law as it may reasonably determine"). The Immunity Statute is a clear enunciation of the State's public policy to temporarily limit the scope of defendants' duty to one of simply avoiding gross negligence, or worse, in their provision of medical services in connection with the State's response to the COVID-19 outbreak in New Jersey during the declared public health emergency. In considering both public policy and fairness in determining the duty defendants owe here, we can think of no clearer an articulation of "the societal interest in the proposed solution" than the solution actually imposed by the Legislature. J.S. v. R.T.H., 155 N.J. 330, 337 (1998).
>
> Est. of Campbell through Campbell v. Woodcliff Health & Rehab. Ctr., 479 N.J. Super. 64, 86 (App. Div. 2024).

In the matter under review, we conclude defendants are immune from liability under a simple negligence or wrongful death action due to the immunity granted by the Immunity Statute.

### B.

However, the second exemption to the Immunity Statute does not apply here based on the facts alleged in the amended complaint. The second exemption

provides that the immunity granted "shall not apply to acts or omissions constituting a crime, actual fraud, actual malice, <u>gross negligence</u>, recklessness, or willful misconduct." <u>L.</u> 2020, <u>c.</u> 18 § 1(c)(2) (emphasis added). Our Supreme Court has stated, "[t]he tort of gross negligence falls on a continuum between ordinary negligence and recklessness, a continuum that extends onward to intentional conduct." <u>Steinberg v. Sahara Sam's Oasis, LLC</u>, 226 N.J. 344, 363 (2016). In <u>Steinberg</u>, the Supreme Court further explained gross negligence is

> an act or omission, which is more than ordinary negligence, but less than willful or intentional misconduct. Gross negligence refers to a person's conduct where an act or failure to act creates an unreasonable risk of harm to another because of the person's failure to exercise slight care or diligence.
>
> [<u>Id.</u> at 364 (quoting <u>Model Jury Charges (Civil)</u>, 5.12, "Gross Negligence" (rev. March 2019)).]

"Whereas negligence is 'the failure to exercise ordinary or reasonable care' that leads to a natural and probable injury, gross negligence is 'the failure to exercise slight care or diligence.'" <u>Ibid.</u> (quoting <u>Model Jury Charges (Civil)</u>, 5.12, at 4-5). Further, the Supreme Court stated in <u>Steinberg</u>,

> To be clear, reckless and willful conduct are degrees of civil culpability greater than gross negligence. Reckless conduct is "the conscious disregard . . . to a known or obvious risk of harm to another" whereas "[w]illful misconduct implies an intentional deviation from a clear duty" owed to another. <u>Anderson v.</u>

Massillon, 983 <u>N.E.</u>2d 266, 273 (Ohio 2012). In sum, negligence, gross negligence, recklessness, and willful conduct fall on a spectrum, and the difference between negligence and gross negligence is a matter of degree.

[<u>Id.</u> at 365-66.]

A complaint must allege sufficient facts to support its causes of action. <u>Nostrame v. Santiago</u>, 420 N.J. Super. 427, 436 (App. Div. 2011). The court must determine if "a cause of action is 'suggested' by the facts." <u>Printing Mart</u>, 116 N.J. at 746 (1989) (quoting <u>Velantzas v. Colgate-Palmolive Co.</u>, 109 N.J. 189, 192 (1988)). When doing so, the court must search "the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." <u>Ibid.</u> (quoting <u>Di Cristofaro v. Laurel Grove Mem'l Park</u>, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Plaintiff has not abandoned the gross negligence claim on appeal. The amended complaint is effectively seeking to hold defendants liable for their own alleged "gross negligence" by asserting defendants are vicariously liable for the acts of their employees or anyone charged with implementing COVID-19 protocols at the time of decedent's admission and demise. As our Supreme Court has instructed, a review under <u>Rule</u> 4:6-2(e) must be performed in a manner that is "generous and hospitable." <u>Printing Mart-Morristown</u>, 116 N.J. at 746. Our

20

role is simply to determine whether a cause of action is "suggested" by the complaint. Ibid. (quoting Velantzas, 109 N.J. at 192).

Applying that principle to the matter before us, we are satisfied that plaintiff has alleged sufficient facts, and not merely conclusory allegations, to support a cause of action for gross negligence only. Discovery may provide a basis to support plaintiff's gross negligence claim.

We conclude plaintiff is entitled to discovery limited solely to the gross negligence claim, specifically that defendants failed as an institution to implement mandatory procedures and policies during the COVID-19 pandemic when decedent was at CareOne at Teaneck. The discovery shall include, but not be limited to, defendants immediately providing the names, specialties, and titles of all individuals who were responsible to implement mandatory policies and procedures during COVID-19, in addition to other discovery plaintiff propounds. We also direct the trial court to conduct another Ferreira conference within thirty days for the purpose of defendants identifying what, if any AOMs are required, because it is impossible to discern that information from the current record.[2]

---

[2] At oral argument, this court questioned defendants' counsel about this information and no response was given.

In sum, we:

(1) reverse in part the April 24, 2024 order denying defendants' motion to dismiss with prejudice any professional negligence claims against doctors, nurses, and other healthcare professionals at defendants' fault because AOM's were not duly served;

(2) affirm in part the April 24, 2024 order denying defendants' motion to dismiss plaintiff's gross negligence claim only. Discovery on the gross negligence claim shall proceed as stated.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-3103-23