NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3493-14T2

ANTHONY McCORMICK,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

August 25, 2016

APPELLATE DIVISION

Submitted August 9, 2016 — Decided August 25, 2016

Before Judges Sabatino, Messano and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-537-12.

Franzblau Dratch, P.C., attorneys for appellant (Brian M. Dratch, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Lisa A. Puglisi, Assistant Attorney General, of counsel; Gregory R. Bueno, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This appeal poses a legal issue not previously decided in case law under the Affidavit of Merit ("AOM") statute, N.J.S.A. 2A:53A-26 to -29.  The matter arises in the context of a plaintiff injured by the alleged negligence of licensed

professionals, who are claimed to have deviated from applicable standards of care while providing services at the behest of a public entity. The issue is whether the plaintiff can avoid the need to obtain an AOM by suing only the public entity and not the professionals. For the reasons that follow, we conclude that such circumvention of the statute is impermissible and affirm the trial court's determination that an AOM was required in this case. We remand, however, for further proceedings to explore more fully whether the sanction of dismissal of this lawsuit is justified.

                                I.

The relevant circumstances are as follows. Since October 2008 defendant, the State of New Jersey, has contracted with Rutgers University Correctional Health Care, formerly part of the University of Medicine and Dentistry of New Jersey ("UMDNJ"), to provide State prison inmates with medical, dental, and mental health services. In that role, UMDNJ provided medical staff and services to the inmates at South Woods State Prison ("South Woods") during the time period relevant to this case.

Plaintiff Anthony McCormick was a State prisoner serving a twenty-year sentence at South Woods. Plaintiff claims that in June 2010, he began complaining to medical staff working at

South Woods of "severe pain in the front area of his head," for which he was given Motrin. According to plaintiff, no diagnostic tests were conducted, and he was left to "needlessly suffer" for a month without additional medical care.

Plaintiff's symptoms persisted, and he was transferred on June 29, 2010 to St. Francis Medical Center for diagnosis and treatment. A CT scan was performed, and it was determined he was suffering from a "[r]uptured right parietal brain abscess with ventriculitis." Plaintiff consequently underwent brain surgery at St. Francis on July 1, 2010. The abscess was evacuated, and he was discharged back to South Woods on July 16, 2010 "in stable condition."

Records of plaintiff's follow-up care performed in October 2010 at the prison's Extended Care Unit noted that he was complaining of blurry vision and dizziness. Neurological testing also revealed signs of cognitive impairment. A medical report stated that plaintiff's "thought process and behavior is that of a [six to seven] year old child," and recited various delusional statements he made during the course of the examination. The report did not state whether the cognitive issues existed prior to the detection of the brain abscess.

Plaintiff submitted a notice of tort claim to the State Treasury's Bureau of Risk Management in October 2010. He then

filed a two-count complaint in the Law Division against the State on June 20, 2012. No medical professionals or other defendants were named. Plaintiff did not include any fictitiously-named parties pursuant to Rule 4:26-4.

In count one of his complaint, plaintiff alleged the medical staff at South Woods had "careless[ly], reckless[ly], and negligen[tly]" failed to "properly treat [his] cerebral condition, [causing] severe and permanent personal injuries[.]" Based upon the same factual allegations, he asserted in count two violations of his rights under the federal and state constitutions, as well as the New Jersey Civil Rights Act ("CRA"), N.J.S.A. 10:6-1 to -2. The complaint did not mention UMDNJ or Rutgers University Correctional Health Care in its factual assertions.

The lawsuit was briefly removed to federal court on the State's motion. Plaintiff moved to remand the matter back to state court, and the State cross-moved for summary judgment. The United States District Court granted the State's cross-motion in part, dismissing plaintiff's federal causes of action. The remaining state law claims were remanded to the Law Division.

The State then moved in the Law Division to dismiss the complaint, arguing it had not been timely served with a notice

of tort claim.  The motion was denied.  Around this time, it appears that plaintiff voluntarily dismissed the remaining state constitutional and CRA claims in count two.

The State again moved to dismiss count one, arguing that it could not be vicariously liable for an injury allegedly caused by employees of UMDNJ.  This motion was also denied.  The State then answered the complaint and denied liability.  It asserted no third-party claims against any persons or entities.

In December 2014, the State filed a third motion to dismiss, arguing for the first time that plaintiff had failed to serve it with an AOM pursuant to N.J.S.A. 2A:53A-27.  Plaintiff countered that he was not obligated to provide an AOM because the State, the sole defendant in this case, is not a "licensed professional" or a licensed "health care facility" within the terms or intent of the statute.

Judge Richard J. Geiger granted the State's motion on January 23, 2015, dismissing the complaint with prejudice.  In his decision, Judge Geiger concluded that because the alleged actions and inactions of the medical staff at South Woods involve conduct by licensed professionals, plaintiff must support his claims of negligence with a proper and timely AOM from a qualified professional.  Plaintiff moved for reconsideration, which was denied.

This appeal followed. Plaintiff principally contends that he was not obligated, as a matter of law, to file an AOM against the State. Alternatively, he argues that, if this court finds that such an obligation exists, he should be afforded an opportunity on remand to procure an affidavit. He makes this request because the State did not assert the need for an AOM in its answer and also because the trial court did not conduct a "Ferreira conference"[1] that could have alerted him sooner to the need for an AOM.

## II.

As the Supreme Court reiterated recently, "[t]he stated purpose of the AOM statute . . . is laudatory — to weed out frivolous claims against licensed professionals early in the litigation process." Meehan v. Antonellis, ___ N.J. ___, ___ (2016) (slip op. at 14) (citing Ferreira, supra, 178 N.J. at 146); see also Buck v. Henry, 207 N.J. 377, 383 (2011).

Pursuant to the mandate expressed in the statute, "[t]he submission of an appropriate affidavit of merit is considered an element of the claim." Meehan, supra, slip op. at 14-15 (citing Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 244 (1998) (holding that a plaintiff's failure to submit the required AOM

---

[1] See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

"goes to the heart of the cause of action as defined by the Legislature")); see also N.J.S.A. 2A:53A-29. "Failure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." Meehan, supra, slip op. at 15 (citing Cornblatt, supra, 153 N.J. at 243).

Section 27 of the AOM statute provides, in relevant part:

> In any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of the filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
>
> [N.J.S.A. 2A:53A-27 (emphasis added).]

The statute also provides that a "licensed person," in the context of malpractice claims against health care providers, includes a person licensed as "a physician in the practice of medicine or surgery"; "a podiatrist"; "a chiropractor"; "a registered professional nurse"; "a health care facility"[2]; "a

---

[2] The AOM statute defines the term "health care facility" as a "facility or institution whether public or private, engaged principally in providing services for health maintenance

(continued)

physical therapist"; and "a registered pharmacist[.]"  N.J.S.A. 2A:53A-26(f)-(m).  The medical staff at South Woods who examined and treated plaintiff, although not identified by name or by occupation in his complaint, include such "licensed persons."

Plaintiff contends he was not required to serve an AOM in this case because the State, as the sole named defendant, is literally not a "licensed person" as defined in N.J.S.A. 2A:53A-26.  Nor does the State meet the statute's definition of a "health care facility" because it is not "engaged principally" in health care.  N.J.S.A. 26:2H-2(a).  In addition, the State is not a "professional corporation[] . . . entirely owned by . . . licensed professionals."  Albrecht v. Corr. Med. Servs., 422 N.J. Super. 265, 273 (App. Div. 2011) (holding that if the defendant in a malpractice case is a professional corporation, then "a plaintiff is required to provide an AOM in order to pursue litigation against the firm alone under respondeat-superior principles").

---

(continued)
organizations, diagnosis, or treatment of human disease, pain, injury, deformity, or physical condition[.]"  N.J.S.A. 26:2H-2(a).  The definition expressly includes, but is not limited to, hospitals, treatment centers, nursing homes, clinics, "dispensar[ies]," "home health care agenc[ies]," and "bioanalytical laborator[ies] . . . or central services facilit[ies] serving one or more such institutions[.]"  Ibid.

As the trial court aptly recognized, these arguments based on a hyper-literal reading of the AOM statute do not excuse plaintiff from his failure to supply a proper affidavit to support his claims that fundamentally are allocations of medical negligence. He cannot avoid the important screening mechanism of the AOM statute by suing only the public entity that procured the services of the individual health care professionals who worked at the prison.

We rejected a similar effort to get around the AOM requirement in Shamrock Lacrosse, Inc. v. Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, 416 N.J. Super. 1 (App. Div. 2010). In that case, the plaintiff, a patent holder, alleged it had been injured by various acts of legal malpractice by an attorney who was handling its patent matters. The plaintiff sued the two law firms that had successively employed the lawyer whose negligent conduct was in question and who had since died. Id. at 8-9. The plaintiff "presumably wishe[d] to invoke principles of vicarious liability" to make the law firms liable for the conduct of their former employee. Id. at 23.

We concluded in Shamrock Lacrosse that a law firm, even though it did not itself hold a license to practice law, should be treated as a "licensed person" under the AOM statute in cases arising out of its associates' allegedly deficient professional

9                                                    A-3493-14T2

conduct. The defendant law firms were therefore entitled to an AOM. Id. at 25, 27. We reasoned that the AOM requirement's "focus is on the resulting harm, not on the business forms of the named defendants" who have been sued. Id. at 23. We rejected the plaintiff's attempt to evade the requirements of an AOM through its overly literal construction of the statute, one that would undermine the public policies the Legislature sought to achieve. Id. at 21-22; see also Albrecht, supra, 422 N.J. Super. at 272-74 (reaffirming the policy analysis of Shamrock Lacrosse).

We apply here a similar analysis, focusing on the nature of the underlying conduct of the medical personnel who allegedly harmed the injured plaintiff. The State employs or utilizes through contracts a host of licensed professionals who work in its prisons, hospitals, mental health facilities, institutions, transportation systems, and other operations. These professionals include doctors, nurses, therapists, counselors, engineers, and scores of other licensees encompassed within the broad sweep of the AOM statute. N.J.S.A. 2A:53A-26.

If such professionals while serving the State, or for that matter any other public entity, engage in harmful conduct that deviates from the standards of care of their respective fields of licensure, and a plaintiff claims that the defendant public

entity is liable for that harm under agency principles, then an AOM from an appropriate qualified person is necessary to support the lawsuit. See Meehan, supra, slip op. at 17-25 (explaining who may be an appropriate affiant in cases respectively involving Sections 27 and 41 of the AOM statute).[3] The AOM is required, regardless of whether the plaintiff chooses to name the negligent professionals as co-defendants. A plaintiff cannot circumvent the intent of the Legislature by suing only the public entity.

In enforcing this obligation and thus carrying out the legislative objectives of the AOM statute, we caution that an affidavit will only be needed when the underlying harmful conduct involves professional negligence, implicating the standards of care within that profession. Hence, if a nurse working in a State prison inattentively stumbles on a stairway and knocks over an inmate, or carelessly spills his or her cup of scalding hot coffee on a prisoner in the hallway, or engages in some other form of negligent conduct that does not implicate professional standards of care, then no AOM is required. See

---

[3] As the Court clarified in Meehan, if the professional who caused the harm is a physician, the more stringent specialization and sub-specialization requirements of the Patients First Act, as set forth in Section 41, may constrict the range of appropriate affiants. Ibid.; see also Nicholas v. Mynster, 213 N.J. 463, 479-80 (2013).

Hill Int'l, Inc. v. Atl. City Bd. of Educ., 438 N.J. Super. 562, 590-91 (App. Div. 2014) (offering further examples of situations in which no AOM would be required), appeal dismissed, 224 N.J. 523 (2016); see also Murphy v. New Rd. Constr., 378 N.J. Super. 238, 242-43 (App. Div.), certif. denied, 185 N.J. 391 (2005) (holding that an AOM was not required to pursue negligence claims against an architectural firm if the allegations did not implicate the standards of care of that profession). Nor is an AOM required if the plaintiff's claims against the public entity are based upon matters of common knowledge. Couri v. Gardner, 173 N.J. 328, 340 (2002); Triarsi v. BSC Grp. Servs., L.L.C., 422 N.J. Super. 104, 114, 116-17 (App. Div. 2011).

The need for a supporting affidavit and the qualifications of a suitable affiant are fact-sensitive, and depend on the circumstances of each case. Meehan, supra, slip op. at 29-30. If an AOM is called for, a plaintiff may not evade the requirement by suing only a public entity and arguing that the entity is not a licensee listed under Section 26. We thus extend the holding of Shamrock Lacrosse to contexts involving public entity defendants and to claims of professional negligence beyond legal malpractice.

We reject plaintiff's argument that he does not need an AOM because he has sued the State on a theory of vicarious

A-3493-14T2

liability. To be sure, under the Tort Claims Act, public entities may be vicariously liable for certain acts of their employees and agents, subject to certain immunities and limitations. See N.J.S.A. 59:2-2 (generally providing for such vicarious liability for the acts of public employees); but see N.J.S.A. 59:1-3[4] (excluding independent contractors from the definition of a public employee); N.J.S.A. 59:2-10 (disallowing vicarious liability where the public employee's actions or inactions comprise a crime, actual fraud, or willful misconduct). Nothing in the Tort Claims Act requires that the individuals whose negligent conduct creates the public entity's liability be named as co-defendants in the action.

Even so, our case law recognizes that an AOM is still required when the plaintiff's claim of vicarious liability hinges upon allegations of deviation from professional standards

---

[4] As mentioned previously, the State argued that it could not be vicariously liable for the acts of employees of an independent contractor (i.e., UMDNJ) in its second motion to dismiss. The State has not cross-appealed the denial of that motion. Generally, "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody[.]" Scott-Neal v. N.J. Dep't of Corr., 366 N.J. Super. 570, 575-76 (App. Div. 2004) (quoting West v. Atkins, 487 U.S. 42, 56, 108 S. Ct. 2250, 2259, 101 L. Ed. 2d 40, 54 (1988)). The "non-delegable" nature of this duty "is an exception to the general rule that one who hires an independent contractor is not liable for the negligence of that contractor." Ibid.

of care by licensed individuals who worked for the named defendant. In Borough of Berlin v. Remington & Vernick Engineers, 337 N.J. Super. 590 (App. Div.), certif. denied, 168 N.J. 294 (2001), we considered allegations of malpractice against a professional engineering firm for failing to adhere to "hydrogeologic guidelines in applying for a water allocation permit" in the negligent siting of two wells. Id. at 596. The plaintiff in Berlin obtained an AOM from a hydrogeologist, and the defendant argued that the AOM was inadequate because it was not from a professional engineer. Id. at 594. We concluded that the hydrogeologist affiant was an appropriately licensed person to submit the AOM against the engineering firm. Id. at 597-98. In that regard we noted that the "appropriate licensed person" from whom an AOM should be sought is not always dictated by the primary specialty of the professional corporation being sued. Id. at 598-99. But an AOM was still necessary, albeit supplied from a different professional than the defendant demanded, in that vicarious liability context. Ibid.[5]

---

[5] The Supreme Court recently cited our analysis in Berlin with approval in Meehan, supra, slip op. at 27-28.

For these reasons, we affirm the trial court's sound determination that plaintiff was required to procure an AOM in this case, in which he claims that he was negligently cared for by the State prison's medical staff. We now turn to the question of whether the trial court's sanction of dismissal of plaintiff's lawsuit was appropriate.

Plaintiff contends that he was deprived of a fair opportunity to obtain an AOM in this case. He notes that the State did not assert the lack of an AOM as an affirmative defense with its answer. More importantly, he emphasizes that the trial court did not conduct the required <u>Ferreira</u> conference, at which the need for an AOM could have been made clear before the statutory deadline for serving an AOM expired.

In the Court's recent opinion in <u>Meehan</u>, <u>supra</u>, it underscored the importance of "a timely and effective" <u>Ferreira</u> conference in assuring the proper and fair implementation of the AOM statute. <u>Meehan</u>, <u>supra</u>, slip op. at 34. As the Court explained, "[t]he conference is designed to identify and resolve issues regarding the [AOM] that has been served or is to be served." <u>Ibid.</u> The Court noted that the conference "continues to be a critical component of fulfilling the purpose of the AOM statute." <u>Id.</u> at 33. It further observed that had such an effective <u>Ferreira</u> conference been conducted, it "would probably

15

have prevented [the] appeal." Ibid. However, the Court did not go so far as to hold that the lack of an effective conference required reversal, because it found the AOM that the plaintiff procured from a prosthodontist sufficed to support his claims against the defendant orthodontist who installed his sleep apnea device. Id. at 31-33.

Given the Supreme Court's recent guidance in Meehan, we cannot conclude on the limited record before us that the lack of a Ferreira conference in this case was inconsequential. On the one hand, until we issued this opinion, there was no published case that expressly held, as we do today, that an AOM may be required when a tort plaintiff sues a public entity for vicarious liability based on the professional negligence of its staff. Hence, a Ferreira conference in this case might have been inconclusive in the absence of such clear precedent. See, e.g., Hill Int'l, supra, 438 N.J. Super. at 594-95 (excusing timely compliance with the AOM requirement because existing case law was unclear about whether an AOM from an engineer could suffice against an architect); Shamrock Lacrosse, supra, 416 N.J. Super. at 29 (likewise excusing the lack of timely compliance where prior decisional law from the federal courts was split on whether an AOM against a law firm was required).

On the other hand, we are mindful that plaintiff's counsel represents a different plaintiff in a companion unpublished appeal we also decide today, <u>James v. County of Middlesex</u>, No. A-5424-14 (App. Div. August 25, 2016). In <u>James</u>, the plaintiff sued a public entity, a county that operated the jail where he was housed and allegedly given inadequate medical care, as well as a private contractor that provided medical services to the county for its inmates. As in this case, the plaintiff in <u>James</u> initially did not serve an AOM. However, he eventually procured one within the statutory deadline, although defense counsel challenged the affiant's credentials.

The parallel circumstances suggest that plaintiff's counsel in both this case and in <u>James</u> has been pursuing a strategy to advance "test cases," in an attempt to avoid the AOM requirement by suing public entities but not individual licensed professionals who provided the medical care. We cannot tell if that strategic supposition is true.

Nor is it clear that if a <u>Ferreira</u> conference had been held here and if, hypothetically, the trial court directed that an AOM was required, that Mr. McCormick (or those who may assist him in making decisions, given his cognitive problems) would have disregarded the court's admonition, refused to procure an AOM, and taken his chances on appeal.

Because the record is presently inadequate for us to resolve the sanction issue, we remand for further proceedings in the trial court to explore the subject further, guided by the Supreme Court's opinion in <u>Meehan</u> and our opinion in this case. The court shall have discretion to conduct a plenary hearing on the subject as it may see fit, after the parties have been afforded the opportunity to submit further briefs and certifications. The trial court shall determine, in light of <u>Meehan</u> and the distinct procedural circumstances here, whether it is equitable to deny plaintiff an opportunity to cure the omission of an AOM within a reasonable time frame.[6]

Lastly, we provide the following guidance for future litigants. In cases such as this, where a plaintiff chooses to sue a public entity for medical malpractice on a theory of vicarious liability, the defendant entity is obligated to comply with <u>Rule</u> 4:5-3 by including in its answer the identities and specialties of the physicians, if any, involved in the defendant's care, along with whether the treatment the defendant received involved those specialties. <u>See</u> <u>Buck</u>, <u>supra</u>, 207 <u>N.J.</u>

---

[6] That said, we reject plaintiff's specific argument that the State is equitably estopped from insisting on <u>any</u> affidavit. <u>Knorr v. Smeal</u>, 178 <u>N.J.</u> 169, 178 (2003). The assessment on remand is instead confined to matters of timing and whether plaintiff should be afforded additional time to produce the AOM now that the governing law has been clarified.

at 396. The plaintiff must then obtain and serve appropriate affidavits of merit within sixty days of the filing of the answer — as discussed by the Court in <u>Meehan</u> and required under Sections 27 and 41 of the AOM statute — that correspond to the qualifications of the individual professionals disclosed by the defendant. The trial court may grant an additional sixty days to procure the AOM upon a finding of good cause. <u>N.J.S.A.</u> 2A:53A-27.

A <u>Ferreira</u> conference must be held within ninety days of service of the answer, at which time the plaintiff's obligations under the AOM statute may be clarified and the court and counsel may address the adequacy of any AOM already obtained. The plaintiff will have until the end of the 120-day period permissible under the AOM statute to correct any deficiencies. <u>Buck</u>, <u>supra</u>, 207 <u>N.J.</u> at 394. We underscore that the purpose of the <u>Ferreira</u> conference is to identify and resolve AOM-related problems that arise. <u>Meehan</u>, <u>supra</u>, slip op. at 33. The conference is not intended to be a substitute for reasonable communication between opposing counsel to resolve AOM issues in the first instance.

If the <u>Ferreira</u> conference fails to resolve a plaintiff's need for more information from defendant to procure an appropriate AOM, the plaintiff must comply with the statutory

scheme by providing a "sworn statement in lieu of the [AOM]" pursuant to <u>N.J.S.A.</u> 2A:53A-28, until the necessary disclosure occurs.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION