**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0493-21

PARASTU SHARIFI,

     Plaintiff-Appellant,

v.

PRINCETON MEDICAL
CENTER, a/k/a PENN
MEDICINE PRINCETON
HEALTH CENTER,

     Defendant-Respondent.

_____

Submitted June 8, 2022 – Decided July 20, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1836-21.

Parastu Sharifi, appellant pro se.

Farkas & Donohue, LLC, attorneys for respondent (Beth A. Hardy, of counsel and on the brief).

PER CURIAM

Plaintiff Parastu Sharifi, a patient who was admitted to and received treatment at Princeton Medical Center, appeals an order dismissing her complaint with prejudice due to her failure to file an affidavit of merit pursuant to the Affidavit of Merit Statute, N.J.S.A. 2A:53A-26 to -29. Because we agree plaintiff was required to submit an affidavit of merit, we affirm.

I.

Plaintiff, representing herself, filed a complaint naming as the defendant "Princeton Medical Center, A Health Center/Hospital AKA as Penn Medicine Princeton [H]ealth Center" (PMC). In the complaint, plaintiff described defendant as "a health care provider." In the civil case information statement plaintiff filed with her complaint, plaintiff checked "Yes" in response to the question, "[i]s this is a professional malpractice case?" Underneath where she checked "Yes," the following instruction was provided: "If you have checked 'Yes,' see N.J.S.A. 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit."

Plaintiff made the following factual allegations in the complaint. On March 10, 2020, plaintiff had "a massive panic attack." Plaintiff "suffered from a nervous breakdown and feeling[s] of helplessness, anxiety, and hopelessness" and was "crying and suffered from [] high blood pressure due to her emotional

distress."  "She started to cough severely, which resulted in her fainting due to a drop in her blood oxygen level."  The East Windsor Township Rescue Squad "was called in to her rescue" and transported her to PMC.  Plaintiff "was being sent to the hospital to get help for her anxiety."  Plaintiff "quickly regained consciousness" but had "difficulty" in stopping her cough and in "control[ling] her emotional state."  Although plaintiff was aware of her surroundings, "she was non[-]verbal and mentally extremely distressed."  While her eyes were closed and she was crying "nonstop," plaintiff "noticed" a rescue-squad member directing the vehicle driver to take her to "a psychiatric part of the hospital."

After she arrived at "the hospital," plaintiff was "placed . . . on a bed" and "noticed a female voice who was trying to undress her forcefully."  Plaintiff held onto her shirt to prevent hospital staff from underdressing her.  Plaintiff "noted that another hospital staff member told the nurse that you cannot undress her if she is refusing to cooperate."  A couple of minutes later, plaintiff heard a male voice.  He introduced himself to her as a doctor and "informed her of her rights to refuse the treatment."  According to plaintiff, "they injected her with a medication without her consent . . . ."

A "short time" later, plaintiff calmed down, "perhaps due to the effect of the medication."  Recalling she had had her dog in her car while shopping,

3

plaintiff "panicked for the dog's well being," got out of the bed, asked for her shoes and belongings, and informed a nurse she was worried about her dog and wanted to leave the hospital. The nurse asked plaintiff for information regarding her car so hospital staff could request local police to assist plaintiff with her dog until she was released from the hospital. After plaintiff provided that information to the nurse, "about three or four security men entered the room and pinned her to the bed and strapped her extremities by force to the bed." Plaintiff "started to yield [sic] that she gives no consent to any treatment and she repeated the sentence multiple times, 'I give NO consent to the hospital staff members for any type of treatment.'" While plaintiff "was forcefully pinned to the bed, the nurse injected her with another shot on her arm, again without her consent and right after her refusal for treatment." Three "big male security staff on top of her strapped her hands and ankles to the bed."

Plaintiff "was left in that condition for hours." She was "denied the right to use the bathroom" and urinated on herself. "[A]fter hours of physical and mental torture being pin[ned] in that position," plaintiff provided a requested urine sample and was subsequently discharged.

Plaintiff claimed in the complaint that as a "result of these mistreatment [sic] by these hospital staff," plaintiff "suffer[ed] severe emotional and mental

distress, anguish, doubt, uncertainty, sleepless nights, degradation, headaches, inconvenience, insecurity, fear, distrust and loss of enjoyment of life." Plaintiff alleged "[a]nybody could go healthy in[to] this part of [the] hospital, and come back totally mentally disturbed due to their unacceptable treatment of their patients."

In the first count of the complaint, entitled "False Imprisonment, Physical and Mental Torture, An Intentional Tort," plaintiff cited the "Rights of patients," N.J.S.A. 30:4-24.2, and asserted defendant had violated those rights. In the second count, entitled "For Negligent Supervision, or Retention," plaintiff accused defendant of breaching its "duty to exercise reasonable care and acted negligently and carelessly in the hiring, training, and supervision by failing to provide proper oversight for competency of [its] staff." Plaintiff specifically faulted defendant for failing to ensure its staff followed its "'Patient Rights' policy." In the third count, entitled "Intentional and Negligent Infliction of Emotional Distress," plaintiff asserted defendant's employees had "acted in the course and scope of their employ[ment]."

The case was assigned to "Track 2" for discovery purposes. The track-assignment notice contained the following instruction: "if you believe that the

track is inappropriate you must file a certification of good cause within [thirty] days of the filing of your pleading."

Defendant filed an answer and included in its answer a demand for an affidavit of merit pursuant to N.J.S.A. 2A:53A-27. Defendant also filed a certification of good cause to change the track assignment executed by defense counsel. Defense counsel asserted the court had "incorrectly designated this case as a Track II nonprofessional malpractice action" even though "[i]n her [c]ase [i]nformation [s]tatement, [p]laintiff admitted the action is a [p]rofessional [m]alpractice case." Defense counsel also contended the allegations in the complaint clearly indicated plaintiff was alleging "professional negligence on the part of physicians and nurses in the Emergency Department for which an Affidavit of Merit would be required." In addition to the track change, counsel asked the court to schedule a Ferreira conference. See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003). In response, plaintiff filed a "certification of rejection to change the track assignment," arguing she had "not claimed malpractice in her complaint" but instead had "clearly demonstrated in her complaint that her Rights as a Patient, pursuant to [N.J.S.A.] 30:4-24.2(d)(3) were bluntly violated by hospital staff."

6

Defendant moved to change the track assignment. In support of the motion, defense counsel certified that "[d]espite the allegations in the complaint referencing alleged improper treatment in [d]efendant's emergency department and [p]laintiff's case information statement designating this as a [p]rofessional [m]alpractice case, the case was assigned to Track II instead of Track III." Defendant's counsel further certified:

> Princeton Healthcare System is a New Jersey nonprofit corporation that operates Princeton Medical Center as an acute hospital, licensed under N.J.S.A. 26:2H-2, and is covered under the Affidavit of Merit Statute, N.J.S.A. 2A:53A-26. Additionally, to the extent [plaintiff] seeks to impose liability on Princeton Healthcare System for the alleged improper conduct of its staff in the emergency department, including licensed physicians and registered nurses, those healthcare professionals are also included within the definition of a licensed professional for which an Affidavit of Merit is required.

Regarding plaintiff's claim her rights were violated pursuant to N.J.S.A. 30:4-24.2(d)(3) when she was placed in temporary restraints, defense counsel contended that claim "necessarily requires a review of the medical records and a determination as to whether the physician deviated from accepted standards of care when he issued an order for temporary restraints. By definition, that is a professional malpractice claim for which an Affidavit of Merit is required to be served." In opposition, plaintiff certified she "strongly believe[d] that

[defendant's] motion to change the track assignment [was] an unfair tactic played by the defendant's attorney to throw pecuniary or non-pecuniary obstacles in the plaintiff's case."

The motion judge granted defendant's motion to change the track assignment from Track II to Track III in an order dated May 14, 2021. The judge found "[p]laintiff's complaint sounds, in part, in professional negligence" and "[t]he allegation of improperly restraining plaintiff in the ER Department requires an analysis of deviation from the standard of care in terms of the order issued to temporarily restrain plaintiff." The judge also scheduled a <u>Ferreira</u> conference to take place on June 4, 2021.

Plaintiff filed a motion for reconsideration of the May 14, 2021 order, arguing in her certification that the allegations in her complaint were tort claims rather than professional-malpractice claims and that the motion to change the track assignment was a "dirty tactic" by defendant.

At oral argument of her reconsideration motion, plaintiff again argued "the lawsuit is not about the medical malpractice" but about how she was restrained against her will by doctors and nurses in the hospital. In opposition, defendant contended "it is a professional liability case" and that the Affidavit of Merit Statute applies to personal injuries "[r]esulting from an alleged act of negligence

by a licensed person in his [or her] profession or occupation," which applied to plaintiff because she was claiming emotional injuries resulting from her hospitalization. Defendant also argued "a jury cannot determine whether or not the order [to temporarily restrain plaintiff at the hospital] was appropriate . . . without expert testimony, because jur[ors] aren't qualified to determine whether emergency circumstances were there and whether that order was justifiable." The motion judge agreed, finding plaintiff had to produce an affidavit of merit because "this all evolves out of a decision and a judgment made by a licensed professional, and that is why the [c]ourt believed . . . that this is a . . . track three case that falls under the guise of professional malpractice and therefore triggers the need for an affidavit of merit." The motion judge also found "nothing has changed" in plaintiff's argument for reconsideration and that the interests of justice did not warrant reconsideration. The judge denied the reconsideration motion in a June 11, 2021 order and scheduled a <u>Ferreira</u> conference to take place on July 2, 2021.

During the July 2, 2021 conference, the court granted plaintiff a sixty-day extension to serve an affidavit of merit, with a new deadline of August 6, 2021. On or about July 23, 2021, plaintiff filed a motion asking the court to appoint

A-0493-21

an expert to provide an affidavit of merit. On August 9, 2021, defendant moved to dismiss the case for failure to produce an affidavit of merit.

A different judge, Judge Alberto Rivas, heard oral argument of those motions. When plaintiff again reiterated her argument that this action was not a malpractice case, the judge explained to plaintiff why the case requires an affidavit of merit:

> THE COURT: -- you had an interaction -- now, I know you don't agree with the interaction, I know you're not happy with the result, but you had an interaction with medical people at Princeton Medical Center. And so you're questioning and you're challenging in your lawsuit the fact that they kept you even though you asked --
>
> MS. SHARIFI: Against my will.
>
> THE COURT: -- to leave. You asked to leave, they didn't let you leave, according to you you were restrained, you were kept. So you disagree with that and that's why you're suing. You're saying they should not have kept you and that you're entitled to damages.
>
> MS. SHARIFI: Correct.
>
> THE COURT: Exactly.
>
> MS. SHARIFI: They illegally kept me, that was my point.
>
>      . . . .

THE COURT: So the defense is, listen, she came to the medical center, we exercised -- and I'm not saying they're right or wrong, but this is what the case is at this point -- the plaintiff came to the hospital, she was observed, a decision was made to keep her in the hospital for observation, for treatment, or what have you.

So that's what makes it a medical malpractice case, because they exercised their medical judgment, you said they exercised their medical judgment in the wrong way and that they shouldn't have kept you and that you're entitled to damages. That's what that lawsuit is all about.

Now, the law in New Jersey is crystal clear . . . . If there's a case where someone is questioning the medical decisions or actions or judgments of healthcare professionals, be it a nurse, be it a doctor, be it any of those people, the law says you have to file, the plaintiff has to file an affidavit of merit . . . to say what Princeton Medical Center did was not medically appropriate and they should be held liable.

Nonetheless, plaintiff again argued the case was not about malpractice. She contended defendant had "imprisoned [her] willfully without [her] consent for hours" and "tortured" her. She continued to assert "[t]his is not a medical malpractice, I am not claiming that they misdiagnosed me or they caused me a permanent injury, this malpractice does not apply in this case."

Agreeing with the judge's analysis of why this case is a professional-malpractice case requiring an affidavit of merit, defense counsel contended, "the entire issue is whether or not those orders [to administer plaintiff medication

and to order temporary restraints] were appropriately given in the circumstances of this case" and argued "that question necessarily requires an analysis of the standard of care applicable to the emergency room physician and registered nurse under those circumstances."

Judge Rivas found plaintiff had to file an affidavit of merit because she was "challenging the medical judgment of the nurse and the doctor and saying they had no right to do what they did." The judge again extended the deadline for plaintiff to file an affidavit of merit, with a new due date of September 10, 2021. The judge instructed plaintiff she had until September 10, 2021, to file an affidavit of merit and that if the affidavit of merit was not filed by that date, the court would dismiss the complaint without defendant having to file a new motion.

After plaintiff failed to file an affidavit of merit by September 10, 2021, Judge Rivas issued an order on September 13, 2021, dismissing the complaint with prejudice pursuant to N.J.S.A. 2A:53A-27 and -29 due to plaintiff's failure to serve an affidavit of merit.

Plaintiff filed a notice of appeal stating she was appealing the September 13, 2021 order. On appeal, plaintiff argues the first motion judge erred in granting defendant's motion to change the track assignment, and Judge Rivas

12

erred in applying the Affidavit of Merit Statute to her "false imprisonment" claim and dismissing the complaint in its entirety based on her failure to produce an affidavit of merit. Unpersuaded, we affirm.

II.

We review de novo motions to dismiss based on failures to comply with the Affidavit of Merit Statute, Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016), in part because they involve a legal determination, specifically "the statutory interpretation issue of whether a cause of action is exempt from the affidavit of merit requirement," Cowley v. Virtua Health Sys., 242 N.J. 1, 14-15 (2020), and in part because they involve a dismissal of a complaint for failure to state a claim. "The submission of an appropriate affidavit of merit is considered an element of the claim." Meehan v. Antonellis, 226 N.J. 216, 228 (2016). Thus, "[f]ailure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." Ibid.; see also Cowley, 242 N.J. at 16 (noting our Supreme Court has construed the affidavit of merit statute "to require dismissal with prejudice for noncompliance"). Accordingly, we limit our inquiry to "examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J.

13

739, 746 (1989); see also Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019).

The Affidavit of Merit Statute requires

> [i]n any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
>
> [N.J.S.A. 2A:53A-27.]

The purpose of the statute is "to weed out frivolous claims against licensed professionals early in the litigation process." Meehan, 226 N.J. at 228. See also Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 466 N.J. Super. 126, 131 (App. Div. 2021) (intent of Legislature was to ensure parties did not waste time or resources on unnecessary litigation, including discovery), aff'd, 250 N.J. 368 (2022). Thus, pursuant to the statute, "a plaintiff must provide 'each defendant' with an affidavit that indicates the plaintiff's claim has merit." Fink v. Thompson, 167 N.J. 551, 559-60 (2001) (quoting N.J.S.A. 2A:53A-27).

A-0493-21

A "licensed person" includes a "physician in the practice of medicine or surgery," "a registered professional nurse," and "a health care facility." N.J.S.A. 2A:53A-26(f), (i), (j). Plaintiff cannot dispute that the hospital and its doctors and nurses fall within that definition.

Not every claim against a licensed person requires an affidavit of merit. An "affidavit will only be needed when the underlying harmful conduct involves professional negligence, implicating the standards of care within that profession." McCormick v. State, 446 N.J. Super. 603, 613-14 (App. Div. 2016); see also id. at 614 (noting affidavit of merit not required in cases involving a nurse who spills hot coffee on a patient or who falls and knocks someone over).

In deciding whether a plaintiff must submit an affidavit of merit, courts must look deeper than how parties designate their cases. "It is not the label placed on the action that is pivotal but the nature of the legal inquiry." Couri v. Gardner, 173 N.J. 328, 340 (2002). Instead of focusing on a label, "courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession." Ibid. If that proof is necessary, "an affidavit of merit is required for that claim, unless some exception applies." Ibid.

A-0493-21

Our courts have acknowledged a "common knowledge exception" to the Affidavit of Merit Statute requirements. Cowley, 242 N.J. at 16. "In the exceptionally rare cases in which the common knowledge exception applies," id. at 17, a plaintiff does not have to submit an affidavit of merit "where the carelessness of the defendant is readily apparent to anyone of average intelligence," Rosenberg v. Cahill, 99 N.J. 318, 325 (1985). "In those exceptional circumstances," Cowley, 242 N.J. at 17, the "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts," Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999). The common knowledge exception is "properly invoked only when 'jurors are competent to assess simple negligence occurring . . . without expert testimony to establish the standard of ordinary care.'" Cowley, 242 N.J. at 19-20 (quoting Nowacki v. Cmty. Med. Ctr., 279 N.J. Super. 276, 292 (App. Div. 1995)). Examples of circumstances falling under the common knowledge exception include a dentist extracting the wrong tooth, Hubbard v. Reed, 168 N.J. 387, 396-97 (2001), and a doctor reading specimen numbers as actual test results, Palanque v. Lambert-Woolley, 168 N.J. 398, 407-08 (2001).

A-0493-21

Plaintiff's complaint makes clear this case falls within the Affidavit of Merit Statute. The factual allegations she recites in her complaint paint a picture of a woman in extreme mental distress and "breakdown," whose blood oxygen level had dropped and who had had a "massive panic attack," had lost consciousness, could not stop coughing or crying, was unable to speak, and was taken by a rescue squad to the hospital in an emergency. She faults the hospital and its staff for administering medicine to her without her consent and for restraining her when she attempted to leave. To prove her case, plaintiff unquestionably would have to show defendant and its staff deviated from a professional standard of care in how they treated her under those circumstances. See, e.g., Ziemba v. Riverview Med. Ctr., 275 N.J. Super. 293, 302 (App. Div. 1994) ("The pivotal issue of whether defendants . . . took reasonable steps to assess, take custody of, [or] detain . . . plaintiff for the purpose of mental health assessment or treatment cannot be decided without competent expert testimony establishing an appropriate standard of care and that such standard was breached by defendants."). Plaintiff, therefore, is bound by the statutory requirement of submitting an affidavit of merit, a requirement she failed to meet despite the multiple extensions and opportunities provided to her.

17

The common-knowledge exception does not apply here. The questions raised by the facts of this case – whether and how a hospital should treat a "mentally extremely distressed" patient who was refusing treatment and threatening to leave; how a hospital should supervise its staff in and train its staff for those emergent circumstances; whether defendant violated plaintiff's rights when it attempted to treat her and prevented her from leaving the hospital when she was in an extreme mental state – convince us this case is about more than simple, ordinary negligence and involves matters falling outside jurors' common knowledge and experience. See Cowley, 242 N.J. at 21-22 (finding common-knowledge exception did not apply to a case concerning what a hospital staff should have done when a patient refused treatment).

Accordingly, we conclude plaintiff had an obligation to provide an affidavit of merit and Judge Rivas properly dismissed the case when plaintiff failed to provide it.

Plaintiff in her brief argued about the order granting defendant's motion for a track-assignment change. We review "only the judgment or orders designated in the notice of appeal." 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004); see also Kornbleuth v. Westover, 241 N.J. 289, 298-99 (2020) (same). An appellant who does not

18

designate an order in a notice of appeal as being the subject of the appeal "has no right to our consideration of th[at] issue." 1266 Apartment Corp., 368 N.J. Super. at 459. Even if we were to consider plaintiff's argument regarding the track-assignment order, our affirmance of the dismissal order renders it moot.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0493-21