**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-0083-24
                        A-0487-24

S.S.,[1]

     Plaintiff-Appellant,

v.

ROBERT WOOD JOHNSON
UNIVERSITY HOSPITAL,[2]

     Defendant-Respondent.

_____

     Submitted October 21, 2025 – Decided November 13, 2025

     Before Judges Gilson and Firko.

     On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4389-23.

     S.S., appellant pro se.

---

[1] We use initials to protect plaintiff's confidentiality.  R. 1:38-3(a)(2), R. 1:38-3(f)(2).

[2] Improperly pled as Robert Wood Johnson Hospital.

MacNeill, O'Neill & Riveles, LLC, attorneys for respondent (Gary Riveles, of counsel; Anelia Dikovytska Brown, on the brief).

PER CURIAM

In these back-to-back appeals, which we have consolidated for the purpose of writing one opinion, plaintiff S.S. appeals from two orders. The first order was entered on August 16, 2024, and dismissed her amended complaint with prejudice for failing to provide an Affidavit of Merit (AOM) as required by N.J.S.A. 2A:53A-27, under A-0083-24. Plaintiff also appeals from an August 30, 2024 order under A-0487-24 that dismissed motions she filed for "litigation for personal injuries and for the integrity of Form A interrogatories" as moot because her amended complaint had already been dismissed with prejudice. Because we agree plaintiff was required to submit an AOM, we affirm the appeal filed under A-0083-24. We dismiss the appeal filed under A-0487-24 as moot.

I.

On July 31, 2023, plaintiff, representing herself, filed a complaint against defendant Robert Wood Johnson University Hospital (RWJ). On August 21, 2023, plaintiff filed an amended complaint against RWJ. In the amended complaint, plaintiff alleged she was transported by ambulance to RWJ for a "CT [scan] of [her] head due to severe head pain." Plaintiff alleged she was

2

A-0083-24

surveilled and "treated as a mentally ill patient" and a "prisoner" for over five weeks. Plaintiff alleged she was monitored while using the bathroom, ordered to strip down, denied the ability to make decisions, and had restricted communication. According to plaintiff, her "rights were ignored," she was "abused verbally" by a nurse, and "force[d]" to undergo thyroid surgery for an overactive thyroid without getting a second opinion. Plaintiff also alleged she "caught COVID" twice at RWJ and was labeled as having "paranoia." Plaintiff sought compensatory damages plus "attorney/self-represented" fees. In the civil case information statement filed with the court, plaintiff designated the case as type number 005, which is a civil right matter.

On December 21, 2023, RWJ filed an answer to the amended complaint, which included a demand for an AOM. After plaintiff failed to file an AOM within sixty days of December 21, 2023, as required by the AOM statute, and respond to discovery demands, RWJ sent a letter to plaintiff via regular and certified mail dated March 14, 2024. The letter indicated that unless these deficiencies were cured within ten days, a formal application would be filed with the court.

Counsel for RWJ stated in the letter that he disagreed with plaintiff's position that an AOM was not required. The letter explained to plaintiff that she

A-0083-24

was "involuntarily committed" to RWJ and "an expert would be required to establish that the hospital did something wrong in maintaining that involuntary commitment." Counsel for RWJ included the deadline for filing an AOM and advised plaintiff that if the requisite AOM was not served by an appropriately licensed individual, RWJ would seek dismissal of her amended complaint with prejudice.

Plaintiff never filed an AOM, and she did not seek an extension to do so. On May 8, 2024, RWJ filed a motion to dismiss the complaint for failure to provide an AOM. RWJ argued plaintiff's amended complaint sounded in medical negligence. RWJ contended its records revealed plaintiff was brought to the emergency department by the police for a psychiatric evaluation because of "suicidal and homicidal ideation." RWJ maintained plaintiff met the criteria for involuntary commitment and was admitted. The discharge summary indicated plaintiff was diagnosed with "paranoia." She was placed on a one-to-one observation status and found by the treating psychiatrist to be incapable of decision-making. Plaintiff also required medical care and treatment at RWJ and underwent a thyroidectomy during her hospitalization.

Plaintiff opposed RWJ's motion to dismiss. Plaintiff argued the AOM Statute did not apply to her amended complaint because the AOM Statute "is for

A-0083-24

malpractice lawsuits," and her amended complaint alleged "patient rights, civil right[s], [and] right to privacy" violations based on her being held against her will at RWJ.

On June 7, 2024, the motion court conducted oral argument on RWJ's motion to dismiss and reserved decision. On June 12, 2024, the motion court denied the motion without prejudice, determined that plaintiff needed to serve an AOM, and ordered plaintiff to serve an appropriate AOM within thirty days. The order stated that if plaintiff failed to serve an AOM within thirty days of June 12, 2024, her amended complaint will be dismissed with prejudice.

In a written statement of reasons accompanying the order, the motion court noted that plaintiff's amended complaint was dismissed on April 26, 2024, without prejudice, for failure to provide discovery pursuant to Rule 4:23-5(a)(1).[3] The motion court reasoned that on April 26, 2024, after reviewing the amended complaint, it determined the complaint "clearly alleged medical negligence" because plaintiff claimed RWJ's agents and its employees, who are

_____

[3] Rule 4:23-5(a)(1) provides a party entitled to discovery "may . . . move, on notice, for an order dismissing or suppressing the pleading of the delinquent party."

A-0083-24

medical professionals, "acted unreasonably[,] which resulted in harm to [p]laintiff."

The motion court highlighted that plaintiff had been apprised by RWJ's counsel of the consequences of failure to provide an AOM. The motion court assumed this was the reason why a Ferreira[4] conference was not initially held. The motion court noted that plaintiff filed a motion to reinstate her amended complaint on May 8, 2024, and requested an extension to obtain and serve an AOM, which RWJ opposed. The motion court reasoned plaintiff was self-represented, was unaware of the AOM requirement, and her financial circumstances made it difficult for her to retain an expert for AOM purposes. In "balancing the equities," the motion court granted one thirty-day extension to plaintiff to file an AOM.

Plaintiff did not file an AOM within the additional thirty-day period. On July 12, 2024, RWJ again moved to dismiss the amended complaint with prejudice for failure to file an AOM. On August 16, 2024, the motion court granted RWJ's motion and dismissed the amended complaint with prejudice.

---

[4] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55 (2003) (holding that trial courts must conduct a Ferreira conference or "an accelerated case management conference" within ninety days of service of defendant's answer in all malpractice cases to resolve questions surrounding an AOM).

In a statement of reasons accompanying the order, the motion court noted a litigant's financial situation does not constitute an exception to the AOM requirement based on "extraordinary circumstances," citing Castello v. Wohler, 446 N.J. Super. 1, 22 (App. Div. 2016). The motion court also determined that plaintiff did not establish the "common knowledge" exception to the AOM Statute and did not show "substantial compliance" with the AOM's statutory requirements.

On August 30, 2024, the motion court entered an order denying plaintiff's motion "for an order for litigation for personal injuries" and "for the integrity" of Form A interrogatories as moot because her amended complaint had been dismissed with prejudice.[5] This appeal followed.

On appeal, plaintiff argues the motion court erred in dismissing the amended complaint based on her failure to provide an AOM without considering alternative doctrines, such as the common knowledge doctrine. Plaintiff also contends RWJ violated her rights by denying her a second opinion before surgery, unlawfully committing her for six weeks, and infringing on her right to make her own medical decisions.

---

[5] Plaintiff's motions were filed on June 8, 2024, but for reasons not explained in the record, were not disposed of in the August 16, 2024 order.

II.

We review de novo motions to dismiss based on failures to comply with the AOM Statute, Castello, 446 N.J. Super. at 14, in part because they involve a legal determination, specifically "the statutory interpretation issue of whether a cause of action is exempt from the [AOM] requirement," Cowley v. Virtua Health Sys., 242 N.J. 1, 14-15 (2020), and in part because they involve a dismissal of a complaint for failure to state a claim. "The submission of an appropriate AOM is considered an element of the claim." Meehan v. Antonellis, 226 N.J. 216, 228 (2016). Thus, "[f]ailure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice." Ibid.; see also Cowley, 242 N.J. at 16 (noting our Supreme Court has construed the [AOM] statute "to require dismissal with prejudice for noncompliance"). Accordingly, we focus our inquiry to "examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989); see also Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019).

The AOM Statute requires

> [i]n any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff

8

shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

[N.J.S.A. 2A:53A-27.]

The purpose of the statute is "to weed out frivolous claims against licensed professionals early in the litigation process." Meehan, 226 N.J. at 228; see also Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 466 N.J. Super. 126, 131 (App. Div. 2021) (explaining that the intent of Legislature was to ensure parties did not waste time or resources on unnecessary litigation, including discovery), aff'd, 250 N.J. 368 (2022).

A "licensed person" includes a "physician in the practice of medicine or surgery," "a registered professional nurse," and "a health care facility." N.J.S.A. 2A:53A-26(f), (i), (j). Plaintiff cannot dispute that the hospital and its doctors and nurses fall within that definition.

Not every claim against a licensed person requires an AOM. "[A]n affidavit will only be needed when the underlying harmful conduct involves professional negligence, implicating the standards of care within that

A-0083-24

profession." McCormick v. State, 446 N.J. Super. 603, 613-14 (App. Div. 2016) (noting AOM not required in cases involving a nurse who spills hot coffee on a patient or who falls and knocks someone over).

In deciding whether a plaintiff must submit an AOM, courts must look deeper than how parties designate their cases. "It is not the label placed on the action that is pivotal but the nature of the legal inquiry." Couri v. Gardner, 173 N.J. 328, 340 (2002). Instead of focusing on a label, "courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession." Ibid. If that proof is necessary, "an [AOM] is required for that claim, unless some exception applies." Ibid.

Our courts have acknowledged a "common knowledge exception" to the AOM Statute requirements. Cowley, 242 N.J. at 16. "In the exceptionally rare cases in which the common knowledge exception applies," id. at 17, a plaintiff does not have to submit an AOM "where the carelessness of the defendant is readily apparent to anyone of average intelligence," Rosenberg v. Cahill, 99 N.J. 318, 325 (1985). "In those exceptional circumstances," Cowley, 242 N.J. at 17, "the jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence

10

A-0083-24

without the benefit of the specialized knowledge of experts," Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999).

The common knowledge exception is "properly invoked only when 'jurors are competent to assess simple negligence occurring . . . without expert testimony to establish the standard of ordinary care.'" Cowley, 242 N.J. at 19-20 (quoting Nowacki v. Cmty. Med. Ctr., 279 N.J. Super. 276, 292 (App. Div. 1995)). Examples of circumstances falling under the common knowledge exception include a dentist extracting the wrong tooth, Hubbard v. Reed, 168 N.J. 387, 396-97 (2001), and a doctor reading specimen numbers as actual test results, Palanque v. Lambert-Woolley, 168 N.J. 398, 407-08 (2001).

Plaintiff's amended complaint makes clear this case falls within the AOM Statute. The factual allegations she recites in her amended complaint sound in psychiatric, medical, and nursing malpractice and deviations from accepted standards of care. The record clearly establishes plaintiff was involuntarily committed at RWJ. Plaintiff's medical record from RWJ states that prior to her involuntary commitment she had been sleeping with a knife, used the knife to cut up walls and couches, and constantly blow dries herself.

In her merits brief, plaintiff faults RWJ and its staff for failing to perform imaging and improperly performing a thyroidectomy, leading to a delayed

11

diagnosis of transverse myelitis. To prove her case, plaintiff must show RWJ and its staff deviated from a professional standard of care in how they evaluated, diagnosed, and treated her under those circumstances. See, e.g., Ziemba v. Riverview Med. Ctr., 275 N.J. Super. 293, 302 (App. Div. 1994) ("The pivotal issue of whether defendants . . . took reasonable steps to assess, take custody of, [or] detain . . . plaintiff for the purpose of mental health assessment or treatment cannot be decided without competent expert testimony establishing an appropriate standard of care and that such standard was breached by defendants."). Plaintiff, therefore, is bound by the statutory requirement of submitting an AOM, a requirement she failed to meet despite the multiple extensions and opportunities provided to her.

The common knowledge exception does not apply here. The allegations made by plaintiff and the questions raised by the facts of this case—improper psychiatric treatment and an improper thyroidectomy—convince us this case is more than simple, ordinary negligence and involves matters falling outside jurors' common knowledge and experience. See Cowley, 242 N.J. at 20-22 (finding common knowledge exception did not apply to a case concerning what a hospital staff should have done when a patient refused treatment).

12

Accordingly, based upon our de novo review, we conclude plaintiff had an obligation to provide an AOM, and the motion court properly dismissed the amended complaint with prejudice when plaintiff failed to provide it. The affirmance of the August 16, 2024 order renders the appeal filed under A-0487-24 moot and that appeal will be dismissed.

Affirmed and dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division